A. L. PECK, Appellant, v. ALFRED OLSEN CONSTRUCTION COMPANY et al., Appellees.

No. 40894.

SEPTEMBER 29, 1931.

OPINION ON REHEARING OCTOBER 25, 1932.

REHEARING DENIED JUNE 21, 1933.

520

H. E. Narey, and Leslie E. Francis and Francis, Maley, Witmer & Todd, for appellant.

K. B. Welty, Oral S. Swift, and John Fletcher, for appellees.

EVANS, J.—The area of dispute in this record is small. Concededly West Okoboji is a navigable lake. The legal title of its bed is in the state. Such title extends to high-water mark. The plaintiff is the owner of twenty acres of land upon its southern shore. The northern boundary of such land is the high-water mark of the lake. The plaintiff has been for many years in a practical sense in exclusive possession of the south shore of this lake in so far as his land abuts thereon. He has developed a considerable enterprise there. This is briefly described by him as a witness, as follows:

"We have a movie, a show house, roller coaster, whip ride, skating rink, bathhouse, store, penny arcade, soda fountain, barber shop, souvenir stand, and various other lines of business, including numerous other buildings and places where refreshments and food

are served, there being some thirty or forty leases to others, besides what we operate ourselves, including also a baseball park."

He has maintained three temporary docks in front of his property, which he has leased to boat owners, who ply their boats upon the lake. The improvement which the state proposes to make requires the removal of one of said temporary docks. The character of the structure proposed to be erected by the state is indicated by the following drawing of the architect:

Sketch
of
PROPOSED PUBLIC WHARF
Arnolds Park
Iowa.

Exhibit Three

Adjoining the property of plaintiff and on the west side thereof is the town of Arnolds Park. Lake street constitutes the eastern boundary of this town. At its south end Lake street connects with a primary highway running east and west along the southern boundary of the town. From such highway Lake street extends north to the lake. The structure proposed by the state extends from the north end of Lake street. Lake street is fifty feet wide. The proposed structure at its widest place is eighty feet wide and encroaches upon a direct line of vision from the plaintiff's property to the extent of twenty-seven feet. There is some dispute in the record as to the point of termination of Lake street. It is contended by the defendant that it extends to the lake. The contention of plaintiff is that it stops short of the high-water mark of the lake by two or three

rods. The plaintiff's original west line is the center line of Lake street. Up to such line the plaintiff claims to own two or three rods of ground between the high-water mark of the lake and the north end of Lake street. The dispute is not very material so far as the decisive issues in this case are concerned. The trial court found the issue with the defendant. There is no record of the establishment of Lake street. Its existence has been mutually recognized by the public and the abutting owners for more than sixty years. In 1916 it was widened by mutual arrangement between the city and the abutting owners, including the plaintiff, by adding five feet thereto at each side. At its north end there was a fill made many years ago. This tended to obliterate the evidence of the high-water mark of the lake. Inasmuch as this street had little reason for its existence unless it extended to the lake, a strong inference arises that such was its objective and its destination. Unless it did extend to the lake, then the public had no means of access to the lake, without trespassing upon the ground of the adjoining owners. The right of the public to use Lake street to the water's edge was never challenged. We think the trial court properly decided this issue, such as it is.

That the title to the lake bed is in the state; that such title is not proprietary but is in the nature of a trusteeship, which confers upon the state a burden rather than a benefit; that the power and the duty conferred upon the state under such title is to maintain and promote the navigation and navigability of such lake; that the title of the state emanated from the national government; that such title of the state, as well as the title of every other state to the beds of navigable waters, is subject to the supremacy of the national government in the interest of interstate commerce—these are propositions not in dispute. The title of the plaintiff to his land likewise emanated from the national government. This brings us briefly to the point of divergence between the parties. The plaintiff contends that the right of ingress and egress which is incidental to riparian ownership is property, and that as such it may not be taken even for public use without compensation. He contends that he may be deprived of it only under the law of eminent domain by condemnation and compensation therefor. On the other hand, the defendant contends that riparian rights upon the navigable bodies of water, whether river or lake, are necessarily subject to navigation rights and subject to the trusteeship of the state and subject to the power and duty conferred upon the state to maintain and to promote the

navigability of the lake, and that the state is not liable to make compensation as a condition precedent to the exercise of its trusteeship.

Broadly speaking, the plaintiff contends that his right of ingress and egress, as a riparian owner, is *paramount* to any right of the state to build any structure even in aid of navigation which will impair such right of ingress and egress; and that such right can be exercised by the state only by making compensation therefor. On the other hand, the contention for the defendant is that the power and duty of the state to maintain and promote the navigation and navigability of the lake is *paramount* to the right of ingress and egress of a riparian owner.

The burden of the argument has been assumed by the plaintiff, and has been very ably carried. His argument has been predicated upon two general propositions. We may call one of them the major proposition, and the other an alternative one. The first one, as indicated above, is that the power and duty of the state to make improvements, even in aid of navigation upon a navigable lake, is subordinate to the right of access of a riparian owner. Second, that, if it be true that the riparian right is subordinate to the right of the state to make improvements *in aid of navigation,* yet in the case at bar the proposed structure sought to be enjoined was *not in aid of navigation.* We will consider the second proposition first.

I. The plaintiff takes the position in argument (though not in any pleading) that the proposed structure is neither a wharf, nor a dock, nor a pier; that it is a "monstrosity" only, and that it is not calculated as an aid to navigation in any legal sense. Its curved form and its adaptability to the convenience of motor vehicles is emphasized by plaintiff as negativing its adaptability to the aid of navigation. The pleadings of the case do not deal with an existing structure. The suit was brought to enjoin the construction of a proposed structure. The evidence discloses, not what the state has done, but what it proposes to do. It proposes to build a main wharf substantially in the form indicated above. From this main wharf, loading docks of smaller dimensions are to radiate. Navigation comprises transportation of persons and commodities from one port to another. These subjects of transportation by water must ordinarily be first transported over the land. Their transportation over the land must be done by land vehicles. The very purpose of a wharf, or dock, or pier is to afford means of transfer of persons or commodities from

land transportation to water transportation or vice versa. The motor vehicle is a well-established instrumentality of modern commerce. It is already doing the bulk of land transportation for the shorter distances. If a motor vehicle brings its load to the wharf and deposits it there, there ought to be some way whereby it could leave the wharf for its return course. In the proposed plan of this structure, provision was made for just such a convenience. Does that impeach the character of the structure as an "aid to navigation"? There can be no navigation in a practical sense without patronage. Here is presented a convenience for the use of patrons and as an inducement to patrons. Patronage must come, if at all, from land, and must come in the main by means of land vehicles. It seems trite to say that, if there were no convenient way whereby a motor vehicle could get away from a wharf, it would be less likely to appear at the wharf at all. The question at this point is: Is the mere fact that the proposed structure provides a convenient way for the return of a motor vehicle inconsistent with the announced purpose that the proposed structure should be in aid of navigation? We think not.

We are not so much concerned with the perfection of the plan proposed as we are with its general scope and character, and whether it was intended in good faith as an aid to navigation, and whether it is reasonably suitable for such purpose. We see no fair ground upon this record to impeach the motives of the public body or to challenge the suitability of the structure for the purported purpose.

The witness, Hutton, who was the engineer and superintendent for the board of conservation of the state, testified to the purpose of "attaching to this circular wharf, of land docks for boats such as I have indicated in this drawing."

He also testified:

"The State will keep on doing other things from now on. It is undoubtedly necessary to have temporary docks or permanent ones that can be varied with the water level for boat landings. No definite plan has been adopted as to which way these docks will run, but in order to use the present pier it will be necessary to put in docks, and if anyone bathes, there must be some means of getting back up."

The proposed structure is a small one, and is to cost about $4,000. It is proposed to so construct the same that future additions may be made thereto. There can be no complaint that the dimensions of the structure are unreasonably large and that they thereby

impose upon the plaintiff an unreasonable and unnecessary interference. The record shows that it is the first and only public dock upon this lake, which has been the public resort of many thousands of people for the last twenty-five years. If the contention of the plaintiff could be sustained herein, it would virtually enable the shore owners upon this lake to maintain a practical monopoly of all its larger privileges.

We hold that the proposed structure is intended in good faith as an aid to navigation, and that it is reasonably suited to that end.

■■ II. This brings us to the crucial question: Is the plaintiff's right of access as a riparian owner paramount to the trusteeship of the state in relation to this navigable lake? By the cession of the national government to the state, no proprietary benefit was conferred. On the contrary, a burden was imposed. The subject-matter of the cession carried with it no emolument nor promise of future revenue. The state came under the burden of maintaining and promoting the navigation of the navigable lake. The dominion thus conferred upon the state was subject to the power and duty of the national government to regulate interstate commerce. In all other respects the dominion of the state is supreme. The question here is, which is paramount, the right of access of the riparian owner, on the one hand, or, on the other hand, the title and trusteeship of the state? The question is not a new one. It has been considered and debated by the courts of many of the states and by the United States Supreme Court. The question has never been directly passed upon in this state. The United States Supreme Court has held definitely that the riparian owner in such a case takes the incidents of his title, such as right of access, subject to the navigability of the waters and subject to those incidents of navigability, which look to its maintenance and promotion; that the right of the government to maintain and promote navigation by whatever reasonable means it may is paramount to the right of ingress and egress of a riparian owner. When the national government has occasion to assert its power over navigation in the regulation of interstate commerce, it holds the riparian right of access as subordinate to the power of the government to promote navigation.

One brief quotation from Scranton v. Wheeler, 179 U. S. 163, 21 S. Ct. 48, 57, 45 L. Ed. 126, will suffice to indicate the doctrine established by the Supreme Court:

"Whether the title to the submerged lands of navigable waters is in the state or in the riparian owners, it was acquired subject to the rights which the public have in the navigation of such waters. The primary use of the waters and the lands under them is for purposes of navigation, and the erection of piers in them to improve navigation for the public is entirely consistent with such use. and infringes no right of the riparian owner. Whatever the nature of the interest of a riparian owner in the submerged lands in front of his upland bordering on a public navigable water, his title is not as full and complete as his title to fast land which has no direct connection with the navigation of such water. It is a qualified title, a bare technical title, not at his absolute disposal, as is his upland, but to be held at all times subordinate to such use of the submerged lands and of the waters flowing over them as may be consistent with or demanded by the public right of navigation. In Lorman v. Benson [8 Mich. 18, 77 Am. Dec. 435], above cited, the supreme court of Michigan, speaking by Justice Campbell, declared the right of navigation to be one to which all others were subservient. The learned counsel for the plaintiff frankly states that compensation cannot be demanded for the appropriation of the submerged lands in question and that the United States under the power to regulate commerce has an unquestioned right to occupy them for a lawful purpose and in a lawful manner."

The same question has received the consideration of the courts of last resort of many of the states. Unfortunately the courts of different states have reached opposing conclusions on the question. Many of the state courts have held that the right of ingress and egress of a riparian owner is *property*, and that therefore it may not be taken for any public use, even in aid of navigation, without compensation. On the other hand, quite as many of the state courts have held in line with the holding of the United States Supreme Court as above indicated. Naturally the appellant contends for one line of holdings in the state courts, and the defendants for the other. The conflicting decisions of the state courts are irreconcilable. It would be useless to discuss them or even to cite them at this point. We have not definitely committed ourselves on this particular question by any former decision, though it is true that several of our cases indicate a clear trend in line with the holding of the United States Supreme Court. So far as the weight of precedent is concerned, we

should not feel justified to accord to the decision of any court a greater weight, as precedent, than to that of the United States Supreme Court. Quite aside from such deference, we are of opinion that the holding of that court presents the sounder doctrine, notwithstanding the contrary views of very respectable authorities.

In support of that view, it would seem reasonable to say that, if a state assume a trusteeship for the public, which carries no proprietary rights of property, and which·brings no emoluments and promises no future revenues, the performance of such trusteeship by the state should not ordinarily be barred or impeded by constructive property rights, which are mere incidents of abutting land. If plaintiff's rights are paramount, they were such in the beginning, and they necessarily operated as a bar to the performance of the very trust imposed upon the state. Why impose upon the state the duty to promote navigation if such duty cannot be performed without invading the rights of the riparian owner? On the one hand, the state is called upon to promote·navigation by appropriate improvements in fulfillment of its duty as a trustee; on the other hand, it is charged with damages at the suit of the riparian owner for the doing of that very duty. The argument in support of the claim for compensation by the riparian owner in such case is that his incidental right of ingress and egress is *property* within the meaning of the law; that, because it is *property*, it cannot be taken even for a public use without compensation. The argument has its fallacy. Let it be conceded that the right of ingress and egress is *property*. That mere fact does not render it immune from subordination to other rights of property. One right may be subordinate, and the other paramount. But both rights may have their value as property. The fact that one is subordinate does not destroy its character as property. If the right of ingress and egress of a riparian owner be deemed subordinate to the interests of navigation and to the right and duty of the state to promote the same, that fact does not necessarily destroy its value. It is still property, be it worth more or less. To say, therefore, that this right of access is *property*, furnishes no reason for saying that it cannot be subordinate to any paramount right.

Furthermore, inasmuch as the navigable waters of this state are under the dual jurisdiction of the national government and of the state, as already indicated, it is highly desirable that there be uniformity of decision on this question as between the federal and the

state courts. Suppose, for instance, it had devolved upon the national government rather than upon the state of Iowa to make this improvement; then clearly the decision of the United States Supreme Court would control, and the rights of the plaintiff would be deemed subordinate to the interests of navigation. To say that the right of the riparian owner is *subordinate* to the interests of navigation when these are promoted by the national government, and are *paramount* thereto when they are promoted by the state of Iowa, presents a grave incongruity. But it is bound to arise if the federal and state courts insist upon conflicting doctrines on the subject. The title of the state and its trusteeship emanated from the national government. Theoretically it took all that the government had. Giving effect, as a verity, to federal judicial decision, the power of the national government to improve navigable bodies of water was paramount to the right of access of a riparian owner. Theoretically therefore, the state must have taken a like right. To hold otherwise would be to say that, though the national government had the paramount power, when it made the cession to the state, yet such power ceased to be paramount when it fell upon the state. The title of the plaintiff to his upland and the title of the state to the bed of the lake emanated from the same grantor. The title conveyed to each purported to be absolute as to the property described. Why should the state be deemed to have taken *less* than the whole, and that the plaintiff should be deemed to have taken something *more* than the whole? True, plaintiff became a riparian owner, but he was a riparian *owner upon a navigable lake*. His incidental right of access was therefore naturally subject to the incidents of navigation upon a navigable lake. One of the incidents of navigation universally recognized is its perpetual need of improvement and maintenance at public cost. It is fully as reasonable to say that a riparian owner is benefited by the improvement of a navigable lake as it is to say that he is damaged thereby. If the particular improvement imposes some degree of burden upon him, it likewise extends a degree of benefit to him. Presumptively the burden and benefit of such an improvement work a mutual compensation. The doctrine invoked by the appellant, and supported by the decisions of several of our state courts, is based in large extent upon the constitutional provision that private property shall not be taken for public use without compensation. In order to apply this constitutional provision, it is necessarily assumed that the riparian owner *has* a paramount property right, which is necessarily invaded

by the improvement of the navigable lake. The doctrine of the United States Supreme Court is predicated upon the theory that the riparian owner has *no* right of property that transcends the right and power of the government to aid navigation. In this case the state is not relying upon a right of condemnation under eminent domain. It could assert its eminent domain by condemnation and take plaintiff's land for a public use for compensation, even though it had no title to the lake bed. But it is not seeking condemnation. It is simply asserting *its own title* and confining its activities wholly within the bounds of such title. What function does its *title* serve, if it must yet proceed by condemnation of plaintiff's property before it can extend its aid to navigation? If the title of the state is to be deemed a mere trust, for the benefit of the public as it is, and is to be deemed subordinate to the necessities and improvement of navigation, why should the incidental right of access of the riparian owner be deemed any less subject to the same necessities of navigation?

According, therefore, to the decision of the United States Supreme Court, the weight of mere precedent not necessarily binding upon us, we are also impressed with the soundness of the reason underneath the decision.

But the doctrine is not confined in its support to federal decisions. It has the further support in the decisions of many state courts, including those of New York, Massachusetts, Pennsylvania, Illinois, Minnesota, Wisconsin, and several others. The cases are largely collected in Corpus Juris under the subjects of "Eminent Domain", and "Navigable Waters".

"Riparian ownership is subject to the dominant right of the government to improve navigation, and where no property of the riparian owner is actually taken or directly invaded, compensation cannot be recovered for injuries which are merely incidental to the lawful and proper exercise of the governmental power. It is not a taking of private property to require, in the interests of navigation, a bridge over a navigable river to be changed or removed, or a tunnel to be lowered or rebuilt, nor to erect dams, dykes or other structures, which incidentally cut off access to the water or to a landing in the channel." 20 C. J. p. 681, section 145.

"The right of the riparian owner to access is qualified and subordinate to the public right of navigation; it must yield to the de-

mands of public commercial necessity, and is subject to rules and regulations imposed by the legislature for the protection of public rights. Hence, it does not prevent the state from assuming jurisdiction and control over the bed and banks of a stream between high and low water marks, or from making changes in the interests of navigation, even though the right of access be cut off. So the owner is without remedy where his rights are interfered with through the improvement of navigation or the regulation of commerce by the government." 45 C. J. p. 503, section 145.

The text in the above quotations is supported by the citation of a very large number of authorities—federal and state.

We are not overlooking the fact that quite an equal number of the state courts hold to the contrary. It would serve no useful purpose to cite or discuss here the cases pro and con on the subject. It is enough to say that the conflict exists and that the conflict presents its usual perplexity to the litigants.

It remains to consider our own cases and to ascertain whether they present to us any reason why we should not follow the federal precedents.

III. We proceed in this division to a consideration of our own cases. That the title of the bed of the lake is in the state, and that it extends to high-water mark, is not questioned by the appellant. McManus v. Carmichael, 3 Iowa 1; Haight v. City of Keokuk, 4 Iowa 199; Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224.

In Musser v. Hershey, 42 Iowa 356, 361, we said:

"It is the settled doctrine in this State that a riparian proprietor upon a navigable stream owns only to ordinary high water mark, that is, to the edge of the bank, and that the whole bed of the river is in the public. McManus v. Carmichael, 3 Iowa 1; Haight v. The City of Keokuk, 4 Iowa 199 (212); Tomlin v. The Dubuque, Bellevue & Miss. R. Co., 32 Iowa 106 [7 Am. Rep. 176]. The party who entered the land in question from the general government acquired proprietorship only to ordinary high water mark, and of course could confer no greater rights upon his grantee. It is true such party would have the right to construct, below high water mark, bridgepiers and landing places, and to reclaim the soil, if he conformed to the regulations of the State and did not obstruct the *paramount* right of navigation. Dutton v. Strong, 1 Black 23 [17 L. Ed. 29]; [St. Paul & P.] Railroad Company v. Schurmeir, 7 Wall. 272 [19 L. Ed.

74]; Lockwood v. N. Y. & New Haven Railroad, 37 Conn. 387; Yates v. Milwaukee, 10 Wall. 497 [19 L. Ed. 984]; Grant v. Davenport, 18 Iowa 179.

"This right, however, does not exist in virtue of any proprietorship of the soil between high and low water mark. It is a mere franchise appurtenant to the riparian proprietorship, and depends upon the ownership of the adjacent soil."

In Grant v. City of Davenport, 18 Iowa 179, 192, we said:

"We entertain no doubt as to the right of the riparian proprietor (outside of any incorporated city or town) to erect wharves or landing places on the shores of navigable waters, if they conform to State regulations (if any), *and do not obstruct the paramount right of navigation.*"

In Shortell v. Des Moines Electric Company, 186 Iowa 469, 172 N. W. 649, 655, we said:

"The state may exercise control over the beds and banks of navigable streams and improve the same subject only to the superior jurisdiction of Congress over the same. The only limitation upon the power of the state to control and improve the same is the paramount right of Congress to control their navigation so far as may be necessary for the regulation of interstate commerce. Pollard v. Hagan, 3 How. 212, 11 L. Ed. 565; San Francisco v. Le Roy, 138 U. S. 656, 11 S. Ct. 364, 34 L. Ed. 1096; Shively v. Bowlby [152 U. S. 1, 14 S. Ct. 584, 38 L. Ed. 331], supra. And we see no reason why the state may not confer jurisdiction upon a municipal corporation traversed by a navigable stream, to improve its bed in any way not inconsistent with the rights of the public, or to confer upon such city authority to exercise such control thereof as was sought to be delegated by the act of the Legislature above referred to."

The foregoing quotations indicate the nearest point of approach to the particular question involved herein that we have ever attained in our decisions. It will be noted that these pronouncements are entirely consistent with the federal doctrine above referred to, and that the trend of discussion in each case is in line with the federal cases.

Obedient, therefore, to the trend of our own cases, and responsive to the reasoning which underlies the decision of the United

States Supreme Court, and of the many state courts, we align ourselves therewith. We attain thereby a uniformity of adjudication as to the rights of riparian owners in cases of aid to navigation, whether such aid be extended by the national government or by the state. The right of the riparian owner will be the same in either case.

IV. Up to this point we have deferred reference to the case of Tomlin v. Dubuque, Bellevue & Miss. R. Co., 32 Iowa 106, 7 Am. Rep. 176. That was a case where the defendant railroad company, pursuant to state authority, had laid its railroad track between high and low water mark of the Mississippi river, whereby the plaintiff, as a riparian owner, had been wholly cut off from access to the river. It was held on appeal to this court that the plaintiff had no right of recovery. That case was decided more than sixty years ago. Manifestly that case, if now followed, might have been decisive against the appellant. Appellant has assailed the case as unsound, and has pressed for its overruling. The infirmity, if such, in that case was that the laying of the railroad track between high and low water mark was not done "in aid of navigation". The case has been much criticized by eminent authorities as being unsound. We do not purport to defend its soundness; nor upon this record do we have occasion to pass upon it. If the overruling of the case would work a reversal of the case at bar and would be essential to such reversal, then the appellant would be entitled to a consideration by us of his attack upon the case. Unless such overruling would work a reversal of this case, the appellant has no interest in pressing for such overruling. If the case at bar must be affirmed notwithstanding, then a pronouncement overruling the Tomlin case would be mere dictum on our part. It is apparent from what we have already said in the foregoing divisions hereof that the overruling of the Tomlin case would not work a reversal of the case at bar. That being true, we will give no further consideration to the question of overruling it.

V. The appellees press the contention that neither the state nor its agency can be sued by the plaintiff without legislative consent. In view of our foregoing conclusion upon the merits of the controversy, we have no need to consider this question.

In our foregoing discussion, we have referred to the plaintiff as a *riparian* owner. This involves a slight inaccuracy in the use of terms, in that a *riparian* owner is one whose land abuts upon a

river. If his land abut upon a lake, he is deemed to be a *littoral* owner. The distinction is wholly immaterial for the purpose of this case. The case law is the same whether the ownership be riparian or littoral, and such case law has been developed largely in riparian cases. It is more convenient to the discussion, therefore, to ignore the distinction and to treat both classes of cases as though they were riparian. Such is the course conveniently adopted in the briefs and we follow it accordingly.

For the reasons indicated in the first three divisions hereof, the judgment of the district court is affirmed.—Affirmed.

STEVENS, C. J., and FAVILLE, ALBERT, WAGNER, and BLISS, JJ., concur.

KINDIG and DE GRAFF, JJ., specially concur.

CLAUSSEN, J., takes no part.

KINDIG, J. (specially concurring)—There is grave doubt in my mind whether the public project proposed is an improvement "in aid of navigation". Much can be said to the effect that it is not.

Assuming, however, that the improvement is in aid of navigation, I concur in the majority opinion on the theory that there is a distinction between the legal principles applicable to such improvement and the law governing a project relating merely to a general "public use". Ordinarily, when private property is appropriated for a public use, the owner thereof is entitled to reasonable compensation. In the case, however, of a riparian or littoral owner whose access to the water is interfered with by an improvement in aid of navigation, said compensation need not be paid. Such riparian right, in the events assumed, is always held subject to the power of the nation or state to build the contemplated improvement in aid of navigation. The owner has no other title or franchise. Consequently his property has not, in fact, been appropriated or confiscated, but rather the state or nation, under the circumstances, has used its own property.

DE GRAFF, J., joins in this opinion.