STATE of Iowa, Appellant,

v.

Harry C. SORENSEN, et al. Appellees.

No. 87–600.

Supreme Court of Iowa.

Feb. 22, 1989.

Thomas J. Miller, Atty. Gen., and John P. Sarcone and Michael H. Smith, Asst. Attys. Gen., for appellant.

Alan H. Kirshen of Kirshen & Kratville, Omaha, Neb., for appellees Sorensen Const., Inc., Harry C. Sorensen, and William Pietrowicz.

Jack E. Ruesch and Maynard S. Telpner of Telpner, Smith, Sawatzke & Ruesch, Council Bluffs, for appellee Nat. Guar. Ins. Co.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER, and ANDREASEN, JJ.

LARSON, Justice.

These interlocutory appeals arise out of a quiet-title action involving several parcels of land totaling approximately 150 acres and adjoining the Missouri River in Pottawattamie County. The principal issue is whether Iowa Code section 614.17 (1983), which bars claims to real estate predating 1970, applies to the state. The district court ruled that it did, thus barring the State's claims to several of the parcels of land. We granted the State's application for interlocutory appeal. In a separate interlocutory appeal, the defendants (to whom we will refer collectively as Sorensen) argue that the court should have barred the State's claims as to *all* of the land, and that it was error to dismiss their counterclaims against the State. We reverse and remand on the State's appeal and affirm on Sorensen's appeal.

The State claims the land was formed as an accretion to the bed of the river and therefore was owned by the State under established principles of accretion law. Sorensen claims that Sorensen Construction, Inc., is the owner under a long chain of deeds and that any claim by the State

was lost under the time limitation of Iowa Code section 614.17. Related actions for breach of warranty under the deeds in Sorensen's chains of title are not involved in this appeal.

Iowa Code section 614.17 provides, in part:

An action based upon a claim arising or existing prior to January 1, 1970, shall not be maintained, either at law or in equity, in any court to recover real estate in this state or to recover or establish any interest in or claim to real estate, legal or equitable, against the holder of the record title to the real estate in possession, when the holder of the record title and the holder's immediate or remote grantors are shown by the record to have held chain of title to the real estate, since January 1, 1970, unless the claimant in person, or by the claimant's attorney or agent, ... within one year from and after July 1, 1980, files in the office of the recorder of deeds of the county in which the real estate is situated, a statement in writing, which is duly acknowledged, definitely describing the real estate involved, the nature and extent of the right or interest claimed, and stating the facts upon which the claim is based.

. . . .

For the purposes of this section, such possession of real estate may be shown of record by affidavits showing the possession. . . .

Sorensen relies on this section to support his argument that the State's claim is barred. He originally asserted in district court that the State's claim was also barred by Iowa Code sections 614.29 to 614.38, our forty-year Marketable Record Title Act. The trial was bifurcated to permit the court to rule on Sorensen's statute-of-limitation arguments under both sections 614.17 and the forty-year act. The court, in ruling on that facet of the case, determined only that section 614.17 applied, noting that Sorensen's original defense based on the forty-year act had not been pursued.

Apparently assuming Sorensen had abandoned this argument, the court made no findings or rulings in regard to it. Sorensen now reasserts the argument, although he did not request the court to rule on it by filing a motion under Iowa Rule of Civil Procedure 179(b) or similar motion. We therefore could consider the argument waived on appeal. *See State Farm Mut. Auto. Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 206 (Iowa 1984); *Arnold v. Lang,* 259 N.W. 2d 749, 753 (Iowa 1977). In any event, based on the public trust nature of this property, as discussed later, it is doubtful that the forty-year act would bar claims to public trust property, despite the act's specific inclusion of "governmental" as well as private claims. *See* Iowa Code § 614.33.

### I. *Application of Section 614.17 to the State.*

The question of whether section 614.17 applies to the State is not a new one. We have been asked on several occasions to hold that all state claims are subject to its time bar. On each occasion, however, we have decided the case on other grounds. *See, e.g., Lakeside Boating & Bathing, Inc. v. State,* 344 N.W.2d 217, 223 (Iowa 1984) (party raising bar of section 614.17 failed to show requisite color of title); *Marksbury v. State,* 322 N.W.2d 281, 287 (Iowa 1982) (failed to prove possession); *State v. Simmons,* 290 N.W.2d 589, 594, *cert. denied,* 449 U.S. 842, 101 S.Ct. 123, 66 L.Ed.2d 50 (Iowa 1980) (same).

Sorensen's argument that section 614.17 applies to all state claims confronts a title standard of our bar association which states that *no* state claims are subject to bar under the statute. *See Standard 10.-01, Iowa Land Title Standards* (6th ed. July 1984) ("Iowa Code section 614.17 is a valid marketable title act, and is a bar against claims arising prior to January 1, 1970, excepting claims owned by the State or the United States.").

The State relies on this title standard and asserts that no state claims are subject to barring under this statute. As a secondary position, the State argues that its claim may not be barred in this case, because the land is "public trust" property and may not be, in effect, lost by default. Sorensen

argues that the purpose of section 614.17 is to add predictability and certainty in land conveyancing and that such purposes would be frustrated if any party, including the state, were to be excepted from it. It further points to the language in section 614.17 which provides that "any interest" must be preserved in order to avoid time bar of that section.

While we give "serious consideration" to our title standards, *Simeon v. City of Sioux City*, 252 Iowa 779, 785–86, 108 N.W.2d 506, 510 (1961); *Tesdell v. Hanes*, 248 Iowa 742, 750, 82 N.W.2d 119, 124 (1957), we stop short of holding that section 614.17 is inapplicable to any claims by the State. Because of the unique nature of the property involved here, it is only necessary to decide whether that statute may be used to bar claims to "public trust" property. We do not decide the broader question of whether section 614.17 bars all types of state claims.

 Ownership of the bed of the Missouri River was granted to the State of Iowa under the equal footing doctrine when Iowa was admitted to statehood. *See Block v. North Dakota*, 461 U.S. 273, 277, 103 S.Ct. 1811, 1814, 75 L.Ed.2d 840, 847 (1983); *Montana v. United States*, 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493, 501 (1981). The state owns the bed of the river from the ordinary high-water mark to the center of the stream. *Nielsen v. Stratbucker*, 325 N.W.2d 391, 393 (Iowa 1982); *Payne v. Hall*, 192 Iowa 780, 783, 185 N.W. 912, 914 (1921); and the riparian owner owns to the ordinary high-water mark. *Id.* Any accretions to the bed of a navigable stream, in the form of islands, also belong to the state. *Nielsen*, 325 N.W.2d at 393; *Payne*, 192 Iowa at 783–84, 185 N.W. at 914; 2 *Patton on Titles* § 305, at 69 (1957). Even if an island eventually joins by accretion to the riparian shore and becomes permanently attached, the state continues to retain ownership. *Holman v. Hodges*, 112 Iowa 714, 718–20, 84 N.W. 950, 952 (1901). These general principles of law are not challenged in the present case.

While it is said that the state owns the bed of its navigable rivers, the incidents of its "ownership" are closely circumscribed. From the time statehood was granted to Iowa, Congress has made it clear that the state's control over navigable streams is subject to certain rights of the public. The original act admitting Iowa requires that navigable waterways be given special status—one which has come to be known as "public trust" property. That act provided:

> The river Mississippi, and the navigable waters leading into the same, shall be common highways, and forever free as well to the inhabitants of said State, as to all other citizens of the United States, without any tax, duty, impost or toll therefor, imposed by the said State of Iowa.

An Act for the Admission of the States of Iowa and Florida into the Union, March 3, 1845, III Iowa Code at 1190.

The public trust doctrine is said to be traceable to the work of Emperor Justinian, based on the notion that the public possesses inviolable rights to certain natural resources. Lazarus, *Changing Conceptions of Property and Sovereignty in Natural Resources: Questioning the Public Trust Doctrine*, 71 Iowa Law Review 631, 632–33 (1986) (hereinafter cited as Lazarus). The doctrine was adopted into the English common law and embraced by nineteenth century American jurists. *Id.* at 636. It appears that the interest of state government in public trust land is, in a sense, only that of a steward. In fact, it has been described by one of our cases as a burden, rather than a benefit. *See Peck v. Alfred Olsen Constr. Co.*, 216 Iowa 519, 522, 245 N.W. 131, 132–33 (Iowa 1933).

In 1842, the United States Supreme Court discussed the concept of public trust in terms of the sovereign ownership of the beds of navigable waters. *See Martin v. Lessee of Waddell*, 41 U.S. (16 Pet.) 367, 10 L.Ed. 997 (1842). What sovereign ownership actually meant was addressed in the landmark case of *Illinois Central Railroad v. Illinois*, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892). In *Illinois Central Railroad*, the Supreme Court upheld a

state statute which repealed an earlier statute permitting portions of Lake Michigan's lakebed to be sold. The Court ruled that a state legislature does not have the power to convey important natural resources to private parties. This prohibition on the sale of portions of the harbor was based on sovereign ownership of navigable waters. *Id.* at 452–55, 13 S.Ct. at 118–19, 36 L.Ed. at 1042–43.

The public trust doctrine is said to have evolved to the point that it now has "emerged from the watery depths [of navigable waterways] to embrace the dry sand area of a beach, rural parklands, a historic battlefield, wildlife, archaeological remains, and even a downtown area." Lazarus, at 649 (citations omitted). The doctrine today, both courts and commentators have noted, "reflects the assertion of public rights that preexist any private property rights in the affected resource." *Id.* at 648–49. *See* 65 C.J.S. *Navigable Waters* § 92, at 288–91 (1966).

The limited power of a state to dispose of such land is illustrated by *State v. Dakota County, Nebraska,* 250 Iowa 318, 93 N.W. 2d 595 (1958), a case in which Iowa officials had attempted to sell land under the Missouri River. The land was held to be part of the public trust, thus inalienable by the state, and "mistakes of officials [in attempting to convey it] cannot deprive a State of its property." *Id.* at 325, 93 N.W. 2d at 599; *see generally* 2 *Patton on Titles* § 297, at 45 (1957) (sovereignty carries with it title to land underlying navigable waters; general statutes of state or federal government relating to sales of public lands are inapplicable.).[1] *See generally United States v. Oregon,* 295 U.S. 1, 14, 55 S.Ct. 610, 615, 79 L.Ed. 1267, 1274 (1935) (presumption exists against the separation of public trust property from sovereignty of the state).

These general principles of public trust, we believe, bear on the ultimate question in this case: Whether our legislature intended that section 614.17 would bar the State's claim to public trust property. The purpose of statutory construction, of course, is to

> look to the object to be accomplished, the evil sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.

*Chicago & N.W. Ry. v. City of Osage,* 176 N.W.2d 788, 792 (Iowa 1970).

In view of the stringent limitations on the state's power to alienate such property, even by design, we cannot ascribe to the legislature an intention that it be permitted to be lost by default. We hold that section 614.17 does not apply to bar claims of the state to public trust property. This is consistent with our case law predating the enactment of section 614.17 which uniformly held that the state could not lose title to public trust type property. *See, e.g., Wenig v. City of Cedar Rapids,* 187 Iowa 40, 50, 173 N.W. 927, 930 (1919) (the state, holding title to the beds and banks navigable streams for the public, cannot lose them by adverse possession); *Park Comm'rs v. Taylor,* 133 Iowa 453, 464–65, 108 N.W. 927, 931 (1907) (same); *Carr v. Moore,* 119 Iowa 152, 154, 93 N.W. 52, 54–55 (1903) (no adverse possession against the state as to bed of lake). *See generally* Annotation, *Adverse Possession—Public Property,* 55 A.L.R.2d 554, 585–86 (1957) ("As against the state, holding title to the beds and banks of navigable rivers for the public, there can be no adverse possession.").

Some property, by its very nature, is incapable of private ownership and should not be included in statutes of limitations *See* 65 C.J.S. *Navigable Waters* § 99(3), at 313 (1966):

> The trust may not be relinquished by a transfer of the property or any special interest therein except as to such parcels as are used in promoting the interests of the public when parcels can be disposed of without impairment of the public interest in what remains.

---

1. While our legislature had provided for the sale of islands in navigable streams through action by the Executive Council, Iowa Code § 111.31, the lack of any reported cases under that statute suggests it has seldom, if ever, been used. Even if such a "sale" were to be attempted by the state under the provisions of that statute, the land would probably remain subject to public use.

such as section 614.17. *See* L. Simes & C. Taylor, *The Improvement of Conveyancing by Legislation*, at 46–47 (1960).

## II. *Is This Public Trust Land?*

■ Sorensen argues that, even if public trust land were to be excepted from section 614.17, this land does not qualify as public trust property. He notes that, in contrast to *Illinois Central Railroad*, in which the state had attempted to sell a part of the bed of Lake Michigan, this land is not a part of the riverbed, nor is it necessary for navigation or commerce.

■ The public trust doctrine, however, is not limited to navigation or commerce; it applies broadly to the public's *use* of property, such as waterways, without ironclad parameters on the types of uses to be protected. *See* Lazarus, at 649; 65 C.J.S. *Navigable Waters* § 92, at 289–91 (Public trust purposes include "rights of navigation, commerce, fishing, bathing, recreation, or enjoyment, and other appropriate public and useful purposes, or such other rights as are incident to public waters at common law, free from obstruction and interference by private persons....").

■ We do not necessarily subscribe to broad applications of the doctrine, noted by one authority to include rural parklands, historic battlefields, or archaeological remains. Lazarus, at 649. In fact, we are cautioned against an overextension of the doctrine. *Id.* at 692. Nevertheless, we believe that a navigable river is unquestionably a part of the public trust. The close circumspection of the state's powers with respect to such property, as discussed above, makes that clear.

■ Fishing and navigation are among the expressly recognized uses protected by the public trust doctrine. *See, e.g., Hardin v. Jordan*, 140 U.S. 371, 381, 11 S.Ct. 808, 812, 35 L.Ed. 428, 433 (1891). Fishing and navigation, whether of a commercial or recreational nature, require means of public access to the river. This means that state-owned land adjacent to the river, as well as the land actually covered by the river, must be part of the public trust. *See*

*Peck*, 216 Iowa at 522, 245 N.W. at 132 (access to lake by motor vehicle necessarily incident to navigation).

■ The land in question here is undoubtedly suited for use as public access to the river, as evidenced by the fact there were proposals by the litigants here to use it for construction of a marina. We do not believe it is necessary, as Sorensen suggests, to examine each tract of state-owned land in proximity to navigable waterways to determine if it is used for navigation or commerce. We take judicial notice of the expanding involvement of Iowans in recreational activities on and near navigable streams such as the Missouri River. Those uses include hiking, camping, biking, and picnicking, as well as transportation on the river itself. In fact, there was considerable evidence that the public had been using the land in question for just such purposes. We conclude that the land in question here was adequately established to be a part of the public trust and is therefore subject to exception from the application of section 614.17.

## III. *Evidence of Accretion.*

■ In order to prevail, the State must, of course, show that it owns the land in question. It attempted to do so by introducing evidence of accretion to the riverbed. The district court, by concluding that section 614.17 would have barred the State's claim in any event, found it unnecessary to permit the evidence of accretion. It held, in effect, that any claim would be barred by section 614.17 regardless of the source of that claim.

Because we reverse the district court on its original premise that the State's claim is barred by section 614.17, the State should be permitted to establish on retrial that it had title through accretion or other means.

We reverse on the State's appeal and remand for further proceedings.

## IV. *The Defendants' Interlocutory Appeal.*

■ The defendants filed counterclaims for inverse condemnation, indemnity, and

mandamus. They also filed counterclaims under the Civil Rights Act, 42 U.S.C. § 1983. The damage counterclaims were dismissed for failure to comply with the procedural requirements of chapter 25A, our state Tort Claims Act. The section 1983 claims were dismissed on the ground the state is not a "person" under that statute. The counterclaims for mandamus were allowed to stand.

The defendants' claims for money damages were subject to the notice and procedural requirements of Iowa Code chapter 25A. The district court, in dismissing these claims, ruled that the defendant had failed to comply with those requirements. The defendants do not seriously challenge that ruling on appeal. However, they claim that the State waived its immunity by filing this quiet-title action.

Chapter 25A provides for waiver of the state's immunity under certain specified conditions, but it is silent as to whether a waiver may also be implied in some circumstances. In *Kersten Co. v. Department of Social Servs.*, 207 N.W.2d 117 (Iowa 1973), we held that the state, by entering into a contract, impliedly waived its immunity to suit under it. To allow a state to enter into a contract and then deny the other contracting party a remedy under the contract would be to "ascribe bad faith and shoddy dealing to the sovereign." *Id.* at 120. In *Charles Gabus Ford v. Iowa State Highway Commission*, 224 N.W.2d 639, 646–47 (Iowa 1974), we refused to extend the rationale of *Kersten* to find such an implied waiver of immunity in a tort action for damages. We have found no cases which support the defendant's waiver argument, and the defendants have not cited any to us.

We affirm the district court's dismissal of the damage claim on the ground the claimants failed to comply with the procedural requirements of chapter 25A. We also affirm the district court's dismissal of the defendants' counterclaims under section 1983. Section 1983 does not itself abrogate states' traditional sovereign immunity. *Cf. Quern v. Jordan*, 440 U.S. 332, 342–45, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358,

367–69 (1979) (Eleventh Amendment), and Iowa has not waived its immunity except to the extent a claimant has employed the procedural requirements of chapter 25A. For the reasons already discussed, the claimant here did not meet those requirements.

REVERSED AND REMANDED ON STATE'S APPEAL; AFFIRMED ON DEFENDANTS' APPEAL.