# IN THE COURT OF APPEALS OF IOWA

No. 22-1314
Filed August 21, 2024

**SHAWN PATRICK SHELTON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Lucas County, Dustria A. Relph, Judge.

A postconviction-relief applicant appeals the summary disposition of his second application for relief. **AFFIRMED.**

Shawn P. Shelton, Anamosa, self-represented appellant.

Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee State.

Considered by Greer, P.J., Ahlers, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DANILSON, Senior Judge.**

Shawn Shelton appeals the summary disposition of his second application for postconviction relief (PCR). Following our review, we affirm.

## I. Background Facts & Prior Proceedings

When reviewing Shelton's appeal from his first PCR action, we summarized the underlying facts from Shelton's criminal proceedings as follows:

> In the early morning hours of July 3, 1989, applicant, Shawn Shelton, and Ivan Eugene Swigart were leaving a party in Chariton, Iowa. Upon exiting town they observed a pickup truck behind them that they believed was following them. Shelton pulled his vehicle over to the side of the road hoping the pickup would drive by. Instead the pickup stopped along side of him and the occupants, Terry Allen Masters and Dwight Kennedy, inquired whether Shelton needed assistance. Shelton asked Masters and Kennedy "what the f*** is your problem" and told them to stop following him. Shelton then sped off throwing gravel at Masters' truck. Shelton proceeded down the highway until he reached a gravel road. He turned onto the gravel road in an attempt to lose Masters and Kennedy. When Masters and Kennedy proceeded past the gravel road turn off, Shelton turned his vehicle around and proceeded back to the main highway. On his way back to the highway, Shelton again encountered Masters and Kennedy driving in the opposite direction down the gravel road. The vehicles seemed to engage in a game of "chicken" with Shelton swerving at the last minute toward the ditch. Masters and Kennedy proceeded down the gravel road as Shelton backed his vehicle out of the ditch and brought it to a stop in the roadway.
>
> Shelton then removed a disassembled shotgun from behind his seat, put it together and loaded it. Shelton told his passenger, Swigart, "we have to kill them before they kill us." Swigart took the shotgun and exited the vehicle taking position in the rear. Masters and Kennedy by this time had turned around on the gravel road to head back toward Shelton. As they approached the Shelton vehicle, Masters and Kennedy observed Swigart with the gun. Masters slowed his vehicle and began to back up slowly. Masters and Kennedy both ducked below the dash board with Masters peaking above the dash to guide the vehicle backwards. Swigart fired the gun hitting Masters' windshield just above the dash board. The bullet struck Masters on the left side of the face, killing him instantly.
>
> Swigart returned to the cab of Shelton's pickup truck stating "let's get the hell out of here" and Shelton proceeded to drive back toward the highway. On the way back, Shelton informed Swigart that

they had to return to the scene in order to retrieve the shotgun shells because they had their fingerprints on them and they needed to make sure that both occupants were dead. When they reached Masters' pickup truck, Shelton took the gun from Swigart and fired three more times at the pickup truck. Swigart reached inside the Masters vehicle to turn off the headlights. They picked up some of the shells and then left the scene. They turned off their headlights and headed in the opposite direction of the highway because they had seen another vehicle traveling down the gravel road toward them.

*Shelton v. State*, No. 08-1962, 2011 WL 441932, at *1–2 (Iowa Ct. App. Feb. 9, 2011) (footnotes omitted).

A jury convicted Shelton of first-degree murder and attempted murder in 1990. However, the supreme court reversed his convictions and remanded for new trial. *State v. Shelton*, No. 19-0555, 2021 WL 3074480, at *1 (Iowa Ct. App. July 21, 2021). Shelton was convicted on retrial. *Id.* Shelton's direct appeal was dismissed as frivolous. *Id.* Then Shelton initiated his first PCR action in August 1992. *Shelton*, 2011 WL 441932, at *2. The district court eventually denied Shelton's PCR application, and this court affirmed on appeal. *Id.* at *3, *11. In 2016, Shelton filed a motion in his original criminal case seeking a new trial based on newly discovered evidence. *Shelton*, 2021 WL 3074480, at *2.

While proceedings relating to that motion were ongoing, Shelton initiated these current PCR proceedings. The State filed a motion for summary disposition, which in part argued that Shelton's claims are time-barred under Iowa Code section 822.3 (2018). In response, Shelton filed a motion to strike the State's statute-of-limitations defense. He also filed his own motion for partial summary judgment. The PCR court addressed the parties' various motions in a ruling that ultimately granted the State's motion for summary disposition.

Shelton now appeals.

## II.    Scope & Standard of Review

We review the summary disposition of PCR applications for errors at law. *See Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019). On review, "[w]e apply our summary judgment standards to summary disposition of [PCR] applications." *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). When reviewing a grant of summary disposition, "we view the record in the light most favorable to the nonmoving party" and "draw all legitimate inferences from the record in favor of the nonmoving party." *Id.*

## III.    Discussion

### A.    Judicial Notice

Shelton first complains that the PCR court did not take judicial notice of specific facts from various case files and asks this court to take judicial notice of the underlying criminal case filings as well as certain specific facts. Judicial notice may be taken on appeal. *See* Iowa R. Evid. 5.201(d) ("The court may take judicial notice at any stage of the proceeding."); *State v. Sorensen*, 436 N.W.2d 358, 363 (Iowa 1989) (taking judicial notice on appeal). Our rules permit a court to take judicial notice of adjudicative facts "generally known within the . . . court's territorial jurisdiction; or [that] [c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Iowa R. Evid. 5.201(b)(1)-(2).

Here, there is no resistance by the State to this court taking judicial notice of the underlying criminal case. Moreover, the underlying criminal case record containing the conviction for which an applicant seeks PCR is automatically part of the PCR record. Iowa Code § 822.6A. And the record on appeal in this action

appears to include the entire record of the underlying criminal case—*State v. Shelton*, FECR 1872. So the underlying criminal case is already a part of the PCR record for our review.

However, we decline to take judicial notice of the three specific facts identified by Shelton.[1] This is not to say we decline to consider evidence of the alleged "facts"; rather, these are not indisputable facts that may properly be the subject of judicial notice. *See Rhoades v. State*, 848 N.W.2d 22, 31 (Iowa 2014) (concluding "Iowa Rule of Evidence 5.201 is nearly identical to the Federal Rule of Evidence 201" and the advisory committee notes that a "high degree of indisputability is the essential prerequisite" under the federal rule). Moreover, the three "facts" would not help the court determine how the law applies to the parties, another requirement to constitute an adjudicatory fact. *Id.* at 32.

Thus, we decline to take judicial notice of the three statements as true.

*B.    Iowa Code section 822.3 and Summary Disposition*

We next address Shelton's contention that his PCR action should not be time-barred by Iowa Code section 822.3. This section requires a PCR application "be filed within three years from the date the conviction or decision is final or, in

---

[1] Shelton asks we take judicial notice of these three facts:

1. On November 16, 2016, Criminal defense investigator Scott Gratias obtained numerous documents from the Lucas County Sheriffs Administrator Deb Dyer per court order 9-2-16. Included in those documents is the investigative report written by Lucas County Sheriff's Deputy Herbert "Bert" Muir (Muir report).

2. Lucas County Sheriff's Deputy, Herbert "Bert" Muir submitted the Muir Report to Lucas County Sheriff Larry Lowe.

3. On June 23, 2017, Lucas County Attorney Paul Goldsmith (C.A. Goldsmith) admitted in open court the "Muir Report" was not known to the prosecution prior to the date of June 23, 2017.

the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3. "However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period." *Id.*

To avoid the three-year time limit due to a new ground of fact, "the applicant must meet the 'obvious requirement' that he or she could not have raised the ground of fact within the limitations period." *Moon*, 911 N.W.2d at 143. It is applicant's burden to make that showing. *Id.* The applicant must also "show a *nexus* between the asserted ground of fact and the challenged conviction," meaning the "the ground of fact is relevant to the challenged conviction." *Id.* (citation omitted). A fact is relevant if it is "the type that has the *potential* to qualify as material evidence for purposes of a substantive claim under section 822.2." *Id.* (citation omitted). To be clear, the ground-of-fact exception is not the same as a substantive claim for PCR based on newly discovered evidence pursuant to section 822.2(1)(d). *Id.*

Here, Shelton filed this PCR action well beyond the three-year limitation period. And the State argues we must affirm the summary disposition. Shelton argues that he neither had possession of, nor knowledge of, a report from an investigating officer, identified as the "Muir report," and a photograph of the scene until November 11, 2016. According to Shelton, this report and photograph were not previously produced notwithstanding a motion to produce filed in the underlying criminal action. Shelton also contends this evidence would assist him in establishing that he had a reasonable belief that deadly force was necessary because it would show the two vehicles were near each other at the time of the shooting. He contends the Muir report and photograph helps establish the two

vehicles were within ten to twenty feet of each other at the time of the shooting by the measurement of tire tracks and water marks believed to be left by his vehicle and the victim's. Shelton noted that a Division of Criminal Investigations agent testified during the trial, "I have no real way of knowing the exact position of either vehicle when the shots were fired." Shelton contends the evidence produced at trial placed the vehicles 164 feet away "dispelling a reasonable use of force."

We previously stated in *Shelton*, 2011 WL 441932, at *6:

> The State more than met its burden to prove that Shelton, apart from Swigart, was not acting with justification when he retrieved, assembled, and loaded the shotgun. Shelton admitted that he had an alternative course of action available—driving back to the highway and back into town. In addition, when Shelton retrieved the gun and handed it to Swigart, the Masters vehicle had not yet turned around to pursue them indicating there was no imminent danger.

This panel's review of the facts supports the same conclusion.

Thus, even if we accept that Shelton never received the Muir report and the photograph of the scene until years after the trial, and they lend support for Shelton's belief that he was in imminent danger, it does nothing to dispel our conclusion that Shelton had an alternative course of action he could have taken before he was in imminent danger. Accordingly, he acted without justification. In other words, even if we conclude the Muir report and photograph could not have been raised at trial because they were newly discovered and constitute material evidence under section 822.2, such evidence does not raise a genuine issue of material fact because it does not matter how close the vehicles were to each other when Shelton admitted he could have driven back into town and avoided the subsequent confrontation. *See Moon*, 911 N.W.2d at 143.

## IV.    *Conclusion*

Even if Shelton's claim is viable as an exception to the three-year bar under section 822.3, summary disposition is appropriate as none of his newly discovered evidence raises a genuine issue of material fact affecting the verdict. The district court correctly granted the State's motion for summary disposition. See Iowa Code § 822.6(3). It determined summary disposition was proper because Shelton failed to timely respond to the State's motion and there were no genuine issues of material fact. We agree for the reasons previously explained—Shelton did not act in self-defense when, rather than simply driving away, he stopped his truck, assembled a gun, handed it to his passenger, and told the passenger to shoot at the victims when they came back around. The new evidence Shelton highlights does nothing to change the material aspects of that story.[2]

We affirm the PCR court's grant of summary disposition in favor of the State.

**AFFIRMED.**

---

[2] Shelton also raises a *Brady* claim in his appellate brief. That claim was not decided by the PCR court and Shelton did not file a motion asking the court to address it, so it is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). We note Shelton also challenges the PCR court's reliance on section 822.8 when granting the State's motion for summary disposition. As we find other grounds support the PCR court's ruling, we need not address its reliance on section 822.8.