J. A. CLARK et al., Appellants,

v.

IOWA STATE COMMERCE COMMISSION, Appellee,

and Iowa Power & Light Company, Iowa-Illinois Gas & Electric Company, Iowa Southern Utilities Company, and Iowa Public Service Company, Intervenors-Appellees.

No. 61365.

Supreme Court of Iowa.

Dec. 19, 1979.

L. W. Courter of Doran, Doran, Courter & Quinn, Boone, for appellants.

Don Charles Uthus, Commerce Counsel, Daniel J. Fay, and Diane L. McIntire, Assts. Commerce Counsel, for appellee, Iowa State Commerce Commission.

B. A. Webster of Gamble, Riepe, Burt, Webster & Davis, Des Moines, Richard T. Jordan of Mahoney, Jordan, Mahoney & Donelson, P. C., Boone, and Keith D. Hartje, Des Moines, for intervenors-appellees.

LeGRAND, Justice.

This appeal involves the construction of a 345,000-volt transmission line by Iowa Power & Light Company (Iowa Power). An earlier dispute concerning this same line was before us in Hanson v. Iowa State Commerce Commission, 227 N.W.2d 157 (Iowa 1975), to which reference is made throughout this opinion. The trial court affirmed the action of the Iowa State Commerce Commission (Commission) in granting a franchise to Iowa Power, and we affirm the trial court.

Although the appellants (objectors) are all residents or property owners in Boone County, the principal objections raised concern the line as constructed in Dallas County. This situation leads to one of the two issues raised on this appeal—the standing of Boone County residents and landowners to object to the line as constructed in Dallas County.

The other issue is the assertion by objectors that the trial court "did not properly interpret section 478.18, The Code 1977" in affirming the Commission's orders granting Iowa Power the right to construct the transmission line in question.

I. In 1975 Iowa Power proposed building a 345,000-volt transmission line having its origin at Lehigh in Webster County, traversing Boone and Dallas Counties, and terminating at Sycamore in Polk County. In Boone and Webster Counties the line was constructed pursuant to Iowa Power's exercise of its eminent domain rights. In Dallas County it was built along a route established by easements obtained from the affected landowners. In both cases construction was on diagonal lines across the land. This proposed line was ultimately rejected in Hanson. See 227 N.W.2d at 163. Hanson directed the utility to "begin again" in order to comply with the provisions of present section 478.18 (§ 489.18, The Code 1973). We held there had been a "wholesale departure" from the statutory requirements in the first proceeding.

The pertinent part of section 478.18 is as follows:

The state commerce commission shall have power of supervision over the construction of said transmission line and over its future operation and maintenance. *Said transmission line shall be constructed near and parallel to the right of way of the railways of the state or along the division lines of the lands*, according to the government survey thereof, *wherever the same is practicable and reasonable* . . .. [Emphasis added].

It is the italicized part of the statute which Iowa Power ignored and which led us to invalidate the franchises in Webster and Boone Counties, leading to our conclusion that the utility must "begin again."

We digress momentarily to consider the sharp disagreement between the parties

concerning the meaning of our "begin again" language in *Hanson*. While it was used without qualification, we nevertheless believe it must be viewed in the context of the issues then before the court. *Hanson* was an appeal from franchises granted in Boone County and Webster County. The Dallas County franchise was not challenged in *Hanson*. Hence it stood as valid. We agree with the Commission that Iowa Power was required to "begin again" only with reference to the franchises which had been set aside by *Hanson*.

Iowa Power did begin again by filing new petitions for franchises in Webster County and Boone County. Objections were filed by approximately 140 persons. After a hearing, the Commission granted franchises for Boone and Webster Counties to Iowa Power. At the same time, the franchise previously granted through Dallas County was extended. We point out that the franchises were granted county by county. Iowa Power's applications were docketed and considered separately as to each county through which the line runs. Approval of a franchise for one county does not dictate the result to be reached in any other county. The statute authorizes the granting of a franchise in whole or in part. § 478.4. In the present appeal we face questions relating only to the Boone County and Dallas County segments. Neither Webster County nor Polk County is here involved.

II. Putting aside for the moment the question of standing, we discuss the other issue raised by this appeal, which is the alleged failure of the Commission and Iowa Power to follow the provisions of section 478.18 and the directives of this court in the *Hanson* opinion.

▮ The gist of this complaint is that the line through Boone County runs along division lines without any prior showing that a route near and parallel to a railroad right of way was not feasible after a "serious and good faith review" by Iowa Power. The objectors urge us to hold this violates section 478.18. In other words they interpret the statute as meaning the utility can justify a route along division lines only after it has been determined one near a railroad right of way is not practicable or reasonable.

We believe this argument distorts the meaning of the statute. We find no such provision in the statute. Nor did we make any such distinction in *Hanson*. On the contrary, *Hanson* repeatedly refers to a statutory preference for *either* of those routes over any other. Division line construction and railroad light of way construction are accorded equal status by section 478.18. Both the language of the statute and the *Hanson* opinion make this clear. The claim to the contrary is without merit.

III. The remaining issue relates to the standing of Boone County residents to object to the location of the line in Dallas County.

Standing has been defined as the right of a person to seek judicial relief from an alleged injury. A party asserting standing must allege a potential injury and must be within the scope of interests which the statute is designed to protect. *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636, 642 (1972).

In another case the Supreme Court said a party must " '[allege] such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975).

▮ The question is complicated because the franchise matters, although consolidated for hearing, were considered and decided separately on a county basis. We believe the objectors had standing in the *Boone County* hearing to show, if they could, that the Dallas County line as franchised predetermined the route through Boone County, that it prevented the Commission from considering other and more practical routes, and that (in the language of section 478.18) this resulted in unnecessary interference with their use of their land. In this context they were granted

standing, and the issue was decided against them on the merits. This finding is supported by substantial evidence and is binding on us. *Hanson*, 227 N.W.2d at 162; *City of Davenport v. PERB*, 264 N.W.2d 307, 312 (Iowa 1978); *Grefe v. Ross*, 231 N.W.2d 863, 865 (Iowa 1975).

However, as we understand the objectors' argument, they seek to go a giant step beyond this and challenge the Dallas County franchise—regardless of damage to themselves—because they allege it was illegally granted. In this sense we hold they have failed to show standing.

The standing argument raises two main points. First, objectors insist Iowa Power ignored the "begin again" edict of *Hanson*. We have already discussed this in Division I and what we said there disposes of that complaint.

Much more important is the second attack. In considering it we must return once more to section 478.18 with its preference for construction of transmission lines either near a railroad right of way or along division lines. The Commission and the district court both held, either explicitly or implicitly, that this provision applied only when easements are taken by eminent domain and that it therefore did not apply to the Dallas County route, which was established entirely pursuant to private easement agreements.

The objectors rely on our *Hanson* opinion, again ignoring the fact that the Dallas County franchise was not then before us. *Hanson* discussed the philosophy and public policy inherent in the plan first adopted by the legislature in 1913, including what is now section 478.18. There we said:

> [The section now designated as section 478.18] was a part of a comprehensive enactment in 1913 which gave the railroad commission, as then known, authority to confer franchises and power of eminent domain upon individuals and corporations who desired to construct lines to transmit "electric currents." 35 G.A. ch. 174. The electric industry was then in its earlier years, and one of the basic policy issues facing the legislature related to the location of transmission lines. Transcending the interests of individual landowners whose farms would be traversed, the issue involved a policy for the whole state: whether to permit diagonal transmission lines throughout Iowa or to restrict lines to railroads and land division lines. The question facing the legislature was by no means open and shut.
>
> Obviously the cheapest, simplest, and most convenient location for transmission lines would be directly from origin to terminus—which would mean diagonal lines in many cases. Such lines would ordinarily be shorter than railroad or land division routes, require less cable and fewer structures, involve interference with fewer landowners, come near fewer buildings, and avoid more changes of direction in lines.
>
> If the legislature required adherence to railroad and land division lines, the electric industry (and therefore its customers) would often have the additional expense involved in longer lines, more cable and structures, proximity to more buildings, more changes of direction in lines, and interference with more landowners. These are built-in, unavoidable added costs of such a system. But such is the system the legislature chose, to be used wherever practicable and reasonable.

227 N.W.2d at 162.

Significantly the language used made no exception for easements obtained by agreement as contrasted with those acquired through eminent domain. The objectors believe this is conclusive. Iowa Power, on the other hand, points to statutory language which it claims lends support to the theory that the prohibition against diagonal lines is limited to those instances in which rights are are acquired by eminent domain. *See* § 478.6, The Code 1977 (in absence of objections, no hearing required unless the petition involves the taking of property by eminent domain.)

Aside from the usual considerations which determine standing, there is another reason of overriding importance why it

should not be granted here. It is apparent the interpretation of section 478.18 for which the objectors contend would result in a serious limitation on the right of property owners to use their property as they wish. This in turn raises substantial constitutional questions. Ordinarily the right to acquire and own property, including the right to use it as the owner chooses, is a natural right to which the police power of the state is subordinate. *Rehmann v. City of Des Moines,* 200 Iowa 286, 290, 204 N.W. 267, 269 (1925); 16 Am.Jur.2d *Constitutional Law* § 290 (1964). Any governmental interference with this right must be justified as a reasonable and necessary exercise of police power to protect or promote the safety, health, or general welfare of the public.

Thus we are faced with a statute which the objectors say places restrictions upon an owner's use of his property. Such governmental interference is permissible only as a reasonable exercise of the police power of the state. Is that a question we should decide in this case? We do not think so.

The objectors, while insisting vigorously on their own right to standing, ask us to decide this issue without the in-court presence of the parties most directly affected—the Dallas County property owners over whose land the transmission line runs. Without expressing any opinion concerning the merits, we decline to resolve that problem until it is before us on an actual adversary basis with a full opportunity for *both* sides to present and argue their views. IV. We have considered all of the issues, whether specifically discussed or not, and we find the judgment should be affirmed.

AFFIRMED.

REES, J., concurs.

McCORMICK, J., concurs specially by written opinion in which UHLENHOPP, HARRIS and ALLBEE, JJ., join.

REYNOLDSON, C. J., and McGIVERIN and LARSON, JJ., dissent.

McCORMICK, Justice (concurring specially).

I concur in the result because I agree with the court on the three points which are dispositive of the appeal. They are:

1. The effect of the decision in *Hanson v. Iowa State Commerce Commission,* 227 N.W.2d 157 (Iowa 1975), was to require Iowa Power to begin again its franchise proceedings only as to Boone and Webster Counties.

2. Under section 478.18, a railroad route is not preferred over a division line route, although pursuant to *Hanson* those routes are each preferred over a diagonal route.

3. The Commission finding of fact that the Dallas County route did not injure rights of the Boone County objectors as alleged is supported by substantial evidence when the record is viewed as a whole and is not affected by error of law. It is therefore binding on us. *See* § 17A.19(8)(e), (f).

Because these points are determinative of the merits of the appeal, I would not reach the other issues addressed by the court and the Commission. However, I am concerned about the court's treatment of the issue of the Boone County landowners' standing to challenge the validity of the Dallas County franchise.

Their standing before the Commission arises from section 478.5, which provides in relevant part: "Any person . . . whose rights may be affected, shall have the right to file written objections . . . to the granting of such franchise . . ." Hearing on the objections is provided for in section 478.6, and the proceeding is a contested case under section 17A.2(2). No dispute exists that plaintiffs alleged in their objections that section 478.18 prohibited the utility from using a diagonal route through Dallas County and that the rights of the objectors were infringed because the resulting terminus of the Dallas County route unreasonably limited the choice of routes through Boone County. The court acknowledges that the Boone County landowners had standing to make that claim, and I agree. However, the court holds that the Boone County landowners lacked standing to attack the legality of the Dallas County

franchise, and I do not agree with that holding.

The standing issue is determined as of the time the claim is made, not after the merits have been tried. *See Iowa Civil Liberties Union v. Critelli,* 244 N.W.2d 564, 567 (Iowa 1976) ("Whether they have the required personal stake in the outcome does not depend on the merits of their claim. It depends on whether, if the wrong alleged does produce a legally cognizable injury, they are among those who have sustained it."). Moreover, the well-pleaded allegations in support of the claim are construed in favor of the claimant and are accepted as true for the purpose of deciding standing. *See Warth v. Seldin,* 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343, 356 (1975); *see also FCC v. National Broadcasting Co. (KOA),* 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943); *Office of Communication v. FCC,* 123 U.S.App.D.C. 328, 359 F.2d 994 (D.C. Cir. 1966) (both cases reviewing agency standing determinations based on allegations of petitions for participation).

In the present case, I believe plaintiffs made sufficient allegations of injury to demonstrate standing under these principles. It is of no consequence to standing that they did not prevail on the merits. Once plaintiffs had standing they had the right to assert the public interest in support of their objections, as they did in urging that Iowa Power lacked authority to construct the transmission line on a diagonal route even with voluntary easements. *See Sierra Club v. Morton,* 405 U.S. 727, 737, 92 S.Ct. 1361, 1367, 31 L.Ed.2d 636, 644 (1972) ("once review is properly invoked, that person may argue the public interest in support of his claim that the agency has failed to comply with its statutory mandate"). On the merits, the Commission found plain-

tiffs failed to prove they sustained a cognizable injury from the alleged wrong. Thus they lost on the merits but not because of lack of standing.

It is true the Commission alternatively held that the utility had authority to do what was done. However, this issue also goes to the merits rather than to standing, and it need not be addressed because plaintiffs lost on the merits on a separate ground.

UHLENHOPP, HARRIS and ALLBEE, JJ., join this special concurrence.

REYNOLDSON, Chief Justice (dissenting).

In the unusual circumstances presented by this record, I would reverse and remand on the ground the Commission is in violation of statutory provisions and the law as laid down in the *Hanson* decision.

I. There is no dispute the total plan of Iowa Power and its companion utilities was to extend a 345,000 volt electric transmission line southeasterly from the Raun substation near Sioux City to Iowa Power's Sycamore substation in Grimes. Involved here was the final four-county north-south segment. The Commission's June 20, 1977, order pointed out it had "docketed the matter by county." Even making the doubtful assumption a project legally can be so segmented,[1] no one contends the "county" franchises were not required to link as one continuous electric transmission line.

It therefore seems bizarre to suggest, as does the Commission, and to hold, as does the majority, that, "Approval of a franchise for one county does not dictate the result to be reached in any other county."

It so happens in this case that a little-used branch line of The Chicago and North

---

1. Granted that informational meetings are required in each county, § 478.2, The Code 1979, there is no statutory authority to break one project into county-by-county franchises. *See* § 478.2 (providing for meetings in *each* county affected by *a* franchise for *a* new transmission line); § 478.3 (requiring the petition to set forth the name of "the individual, company, or corporation asking for *the* franchise," and the rela-

tionship of "*the* proposed project" to various needs, existing electric utility systems, and other power systems planned for the future) (emphasis added). The section 478.4 right to grant "such franchise" in whole or in part refers to the same franchise described in the petition. It provides no authority for the procedure followed by the Commission in this situation.

Western Transportation Company bisects the east-west segment of the transmission project in Webster County and then runs southeasterly about fifty miles through Boone and part of Dallas Counties, where it bisects another already-existing east-west transmission line running directly into Sycamore substation. These farmer-objectors wanted serious consideration given to running the transmission line in this railroad right-of-way, using single-pole construction. Instead, the Commission granted a Webster County "franchise" which took the east-west segment to Lehigh, nine miles east of the railroad right-of-way. To the south, the Commission granted a Dallas County "franchise," on a final-segment diagonal from the southeast to the northwest, which terminated seven miles east of the railroad right-of-way. Regardless of the formalities which thereafter ensued, objectors' proposed railroad route was doomed by this *fait accompli.*

The Commission early ruled objectors had standing to intervene in the Dallas County "franchise" proceeding:

> The petitioners may have their rights adversely affected by a segment of the line which lies in another county. We view them as concerned parties who should be given at least the opportunity to participate in overall evaluation of the transmission line.

But in its later ruling the Commission reversed course, holding "such landowners have no standing to challenge the proposed routing under voluntary easements in Dallas County on the ground that it does not follow division lines of lands or railroads." In its order denying rehearing the Commission rejected as "absurd" the objectors' contention section 478.18 "was enacted to protect all of the citizens of the State of Iowa and the future occupants and owners of land," and asserted as a legal proposition that section 478.18 "does not even apply to voluntary easements."

Objectors not only contested the proposed diagonal construction, but the terminus of the Dallas County "franchise." They should be accorded enough standing as persons affected by the overall development of the project to do both. The Commission adopted the view the matter ended when the Dallas County landowners, persuaded by the fifty percent additional damages paid by Iowa Power, reacknowledged the diagonal easements. This amazing abdication of authority to determine the overall route over which a franchise is to be granted, and repudiation of the clear legislative mandate in section 478.18 against diagonal transmission lines, resulted from accepting the utilities' argument that the constitutional right of private parties to contract must be recognized. Such a retreat ignores the fact the parties are in no position to contract until the Commission has franchised the proposed route. § 478.4 ("with such modifications as to location and route as may seem to it just and proper"). It abandons the proper role of the Commission as representative of the public in carrying out the legislatively-expressed will of all Iowans. The perpetual damage inflicted by diagonal lines on Iowa's only potentially inexhaustible resource—its farmland—looms large when measured against the money damages to be obtained by persons who happen to hold present title.

II. The Commission reached its decision by not following *Hanson* and by a 180-degree misinterpretation of its teachings.

It is plain the overall thrust of this legislation was to protect *farmland,* and no one in this litigation has suggested any other purpose. We should judicially notice, as the Commission should have done, that long-established rail lines often form property boundary lines and furnish a ready-made conduit for additional utilities to pass through farmland with minimal disruption to farm activities and production. It follows the legislature must have intended that railroad routes be considered seriously before opting for division line routes through cultivated fields.

Important here is the following from *Hanson,* already partially quoted by the majority:

If the legislature required adherence to railroad and land division lines, the electric industry (and therefore its customers) would often have the additional expense involved in longer lines, more cable and structures, proximity to more buildings, more changes of direction in lines, and interference with more landowners. These are built-in, unavoidable added costs of such a system. But such is the system the legislature chose, to be used wherever practicable and reasonable.

Clearly the legislature did *not* mean that the *additional burdens which ordinarily attend* railroad and land division routes, as contrasted to diagonal lines, make those routes impracticable and unreasonable. Those additional burdens inhere in the railroad and land division system. If those burdens made the railroad and land division system impracticable or unreasonable, then few if any situations would exist in which such system would prevail over diagonal lines and the statute would be an almost empty letter. (Emphasis added.) 227 N.W.2d at 162–63. This court thus recognized that a railroad route would involve the *"additional expense"* of longer lines, more cable and structures, more changes of direction, proximity to more buildings, and interference with more property owners. The legislature should also be accorded the intelligence to know towns are located along railroad routes. Yet the whole thrust of the utilities' evidence was to demonstrate the proximity to buildings and alleged additional cost involved in the railroad route. Under careful examination by objectors' counsel, no witness denied these problems were other than those which would "ordinarily attend" running a transmission line along a railroad right-of-way. While the utilities' experts opined the suggested single-pole construction would have to bypass the little towns along the railroad, no explanation was advanced to show why Iowa Power's single-pole transmission line was acceptable through the city of Des Moines and over the much-traveled I–235 highway. The Commission turned its decision on the same factors which we said in *Hanson* were not to be controlling.

Finally, the Commission's decision quoted the *Hanson* paragraph last above set out, underlined the sentence, "Those additional burdens inhere in the railroad and land division system," then held that provision "effectively blunts their [the objectors'] standing to complain of division line routing because of its inherent burdens on their interests." The "burdens" we referred to in the last paragraph as well as the "additional expense" mentioned in the prior paragraph from *Hanson* were references to the utilities' burdens and expense, not the property owners'. The result of this misinterpretation was to stand the *Hanson* decision on its head.

I would reverse, vacate the Commission's decision, and again remand to the Commission for reconsideration in light of the above law interpretations relating to objectors' standing, section 478.18 and our *Hanson* holding.

McGIVERIN and LARSON, JJ., join this dissent.