George H. SCHALLER, As Trustee of the George H. Schaller Trust, Appellee,

v.

STATE of Iowa, Acting Through the Iowa Department of Natural Resources, Appellant.

No. 94–1058.

Supreme Court of Iowa.

Sept. 20, 1995.

Thomas J. Miller, Attorney General, and Michael H. Smith, Assistant Attorney General, for appellant.

Gary W. Armstrong of Mack, Hansen, Gadd, Armstrong & Schiller, P.C., Storm Lake, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN and TERNUS, JJ.

ANDREASEN, Justice.

The State of Iowa, acting through the Iowa Department of Natural Resources (DNR), appeals from a district court order granting Trustee George H. Schaller's (Schaller) motion for summary judgment in a mandamus action. Schaller filed the action to compel the DNR to lease a portion of a public lake access road vacated by the Buena Vista County Board of Supervisors (Board). The district court ordered the DNR to institute condemnation proceedings to either acquire fee title or a leasehold interest in the portion of the vacated road owned by Schaller. We affirm in part, modify in part, and remand.

## I. *Background*

The dispute in this case is over the north 186 feet of a sixty-six foot wide secondary road ending at the south shore of Storm

Lake. Buena Vista County acquired a thirty-three foot easement on both sides of the section line for construction and use as a county road. The parties agree the county acquired the easement although the record does not disclose the method employed. *See Bangert v. Osceola County,* 456 N.W.2d 183, 186–88 (Iowa 1990) (discussion of how county board of supervisors can establish a road). The road has been used by the public for over fifty years.

In 1964 the Iowa Conservation Commission, a statutory predecessor of the natural resource commission, purchased a 1.3 acre parcel of land adjoining the south shore of Storm Lake and the county road. The Commission built a public boat ramp extending north from the east half of the road. The public parked vehicles on the purchased parcel of land and on the county road.

Schaller owned the property adjoining the west side of the county road. Part of the west boundary of the road had been fenced for many years. Sometime before 1990, Buena Vista County, at the request of Schaller, installed a cable barrier extending the fence further north to prevent the public from parking on Schaller's property.

In 1990 the DNR added a second lane to the boat ramp and constructed a concrete parking area with lighting. The concrete surface not only covered the land purchased in 1964 but also extended over the sixty-six foot county road. The DNR installed a six inch curbed island in the parking area. There have been no improvements made by the DNR since the 1990 project.

The Board became concerned about potential liability exposure because of the parking island. In June 1991, after negotiations with the DNR failed to produce an agreement, the Board legally vacated the north 186 feet of the road. Consequently, the title to the east thirty-three feet of the vacated road reverted to the DNR and title to the west thirty-three feet of the vacated road reverted to Schaller.

Schaller attempted to negotiate a lease of the west half of the vacated road with the DNR. The DNR claimed it had a prescriptive easement for continuing public use of the road for lake access and refused to negotiate a lease.

In June 1993 Schaller filed a petition for mandamus to compel the DNR to institute a condemnation proceeding to establish a long-term lease for the public use of the west half of the vacated road. In its answer, the DNR denied Schaller had any legal right to compel it to lease the vacated road. The DNR affirmatively alleged the public had a prescriptive easement for continuing public use of the road and that it had a right to maintain improvements that were constructed within the right of way. Schaller and the DNR filed cross-motions for summary judgment. Each party filed a resistance. After oral hearing, the district court sustained Schaller's motion for summary judgment and ordered the DNR to institute condemnation proceedings to either acquire a fee title or a leasehold interest in the west half of the vacated road.

The DNR argues the main issue on appeal is whether the right of the public in a state improved public lake access road can be relinquished to a private landowner by the Board. The DNR urges the public acquired a prescriptive right to use the vacated road for lake access and that Iowa Code sections 306.4, 456A.24(2), and 461A.11 (1993) and the public trust doctrine support a public right of access of the vacated road.

## II. Scope of Review.

■ Our review of summary judgment is for correction of errors at law. Iowa R.App.P. 4. We must examine the entire record and determine whether any genuine issues of material fact are in dispute and whether the district court correctly decided the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Hunziker v. State,* 519 N.W.2d 367, 369 (Iowa 1994).

## III. County Easement and Vacation.

■ The rights of the public rest upon the road easement to Buena Vista County. Where the easement extends to a public lake, it may be inferred the road easement provides access to the lake. *See Peck v. Alfred Olsen Constr. Co.,* 216 Iowa 519, 522, 245

N.W. 131, 132 (1932). A road easement permits improvements which make travel safer and more convenient, and allows the road to be used for parking. *See* 26 Am.Jur.2d *Eminent Domain* §§ 208, 210–11 (1966). An easement exists distinct from ownership, *Hawk v. Rice*, 325 N.W.2d 97, 98 (Iowa 1982), and does not affect title which exists subject to the easement, *Polk County v. Brown*, 260 Iowa 301, 305, 149 N.W.2d 314, 316 (1967). If the easement is vacated or abandoned, the title remains relieved of the easement. *Id.*

A county has statutory authority to vacate roads. Iowa Code § 306.10; *Mulkins v. Board of Supervisors*, 330 N.W.2d 258, 260 (Iowa 1983). The public does not have a vested right to keep a road open. *See Mulkins*, 330 N.W.2d at 260; *Hinrichs v. Iowa State Highway Comm'n*, 260 Iowa 1115, 152 N.W.2d 248, 252 (1967).

> It is settled in Iowa that public highways are created by statute, either directly or through power delegated to some subdivision of the state, that they may be discontinued in the same way, and no individual can acquire such vested rights against the state as will prevent the discontinuance of an established public road.

*Warren v. Iowa State Highway Comm'n*, 250 Iowa 473, 477, 93 N.W.2d 60, 63 (1958). Once a county vacates a road, the easement is lost, and exclusive possession is restored to the original owner. 39 Am.Jur.2d *Highways, Streets, and Bridges* §§ 142, 184 (1968); *see also Tomlin v. Cedar Rapids & I.C. Ry. & Light Co.*, 141 Iowa 599, 601, 120 N.W. 93, 94 (1909) (where a street is vacated the right of the public is divested and the street becomes private property). Here, once the Board vacated the north 186 feet of the road, the rights of the public were relinquished and Schaller took title and exclusive possession of the west thirty-three feet of the vacated road. The DNR admits the Board legally vacated the road.

### IV. *Prescriptive Easement.*

The DNR claims the public acquired a prescriptive right to use the vacated roadway for access to the lake by its continued use for more than fifty years. To constitute prescriptive use, the use must be without legal authority. Until the Board vacated the road the public use was based upon the road easement. There was no prescriptive use by the public prior to vacation. Permissive use of the road is not adverse and continued use does not become adverse use by the mere lapse of time. *Mensch v. Netty*, 408 N.W.2d 383, 387 (Iowa 1987).

### V. *Statutory Authority–Concurrent Control.*

Iowa Code subsection 306.4(2) vests jurisdiction and control of secondary roads in the county board of supervisors while subsection 306.4(4)(b) permits the board of supervisors and the controlling state agencies to have concurrent jurisdiction and control over any road which is an extension of a secondary road and both enters and exits state land. Under the provisions of Iowa Code section 461A.3, the natural resource commission (commission) has the power to "maintain, improve or beautify state-owned bodies of water, and to provide proper access thereto." The commission has the power of eminent domain and "may purchase or condemn highways connecting parks with ... public highways." Iowa Code §§ 461A.7, .8. The commission has jurisdiction of "[a]ny land adjacent to a meandered lake ... which has been conveyed by gift, dedication or other means to the public, but has not been conveyed to the jurisdiction of a specific state agency or political subdivision." *Id.* § 461A.11. The DNR has the authority to "[a]cquire by purchase, condemnation, lease, agreement, gift and devise lands or waters ... and the rights of way thereto." *Id.* § 456A.24(2).

The DNR argues these statutes manifest a legislative intent that some public body, either state or local, or both, will maintain jurisdiction over a public road which provides access to a public lake. Citing *Marksbury v. State*, 322 N.W.2d 281, 287–88 (Iowa 1982), the DNR argues the commission's jurisdiction may be upheld in the absence of a gift where the land has been conveyed by dedication or other means to the public.

We fail to find that either the statutory provisions or our *Marksbury* opinion create concurrent jurisdiction and control when the

county, a specific political subdivision, acquires the road easement. The clear statutory intent is to vest the county board of supervisors with the power to establish, alter, or vacate secondary roads. Iowa Code §§ 306.4(2), 306.10. Concurrent jurisdiction and control of a secondary road can be established only by agreement between the board of supervisors and a state agency. *Id.* § 306.4(4)(b). Here, the board refused to enter into an agreement with the DNR.

## VI. *Public Trust Doctrine.*

The DNR urges the public's right of access to Storm Lake across a vacated road is protected by the public trust doctrine. The doctrine is "based on the notion that the public possesses inviolable rights to certain natural resources." *State v. Sorensen,* 436 N.W.2d 358, 361 (Iowa 1989). Because the issue in this appeal involves the west thirty-three feet of the vacated road, not state-owned land, the public trust doctrine as set out in *Sorensen* is not applicable.

Although the public trust doctrine may support establishment of an access across private property, the facts of this case do not support its application because the public's access is not denied by a recognition of Schaller's property rights. The west thirty-three feet of the vacated road is not necessary for the public to fully enjoy the south shore of Storm Lake. The east thirty-three feet of the vacated road owned by the DNR offers access to the parking area and the boat ramp. Furthermore, Schaller is not attempting to deny public use of the west thirty-three feet of the vacated road but is simply seeking compensation and reasonable conditions for the public's use of the property.

## VII. *Taking.*

The Constitution provides in part "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. This provision is applicable to the states by the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358, 364 (1980). Our Iowa Constitution similarly provides, in pertinent part: "Private property shall not be taken for public use without just compensation first being paid...." Iowa Const. art. I, § 18.

An inverse condemnation is "the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, 377 (1980). An essential element of inverse condemnation is that there is a taking of the property. *Water Dev. Co. v. Board of Water Works,* 488 N.W.2d 158, 160 (Iowa 1992). A taking does not necessarily require a transfer of physical control over the property but there must be a "loss of some compensable interest." *Id.* A taking exists if there is a substantial interference with the use and enjoyment of the property. *Hunziker,* 519 N.W.2d at 369. The character of the intrusion, however, and not the amount of damages determines whether a taking has occurred. *Phelps v. Board of Supervisors,* 211 N.W.2d 274, 277 (Iowa 1973).

Mandamus is the proper "procedural device to compel condemnation when there has been a taking of private property for public use without just compensation." *Hunziker,* 519 N.W.2d at 369. The court's duty is to "determine whether a factual issue exists that would permit a condemnation commission or a jury on appeal of an award to find an intrusion that produced a measurable decrease in the property's market value." *Fitzgarrald v. City of Iowa City,* 492 N.W.2d 659, 663 (Iowa 1992). We conclude there was a taking of private property for public use and that the district court correctly ordered condemnation proceedings be instituted.

Although the owner was compensated for damages when the county acquired the road easement, Schaller is entitled to recover "the difference between the fair market value of the property immediately before condemnation and before it has been affected by the proposed public use and the fair market value of what is left after the taking." *Thompson v. City of Osage,* 421 N.W.2d 529, 532–33 (Iowa 1988). Although the vacation of the road did not reduce the value of the proper-

ty, the subsequent public use of the road substantially deprived Schaller of the use and enjoyment of the property. A condemnation commission could find a reduction in the fair market value of the property from the continuing public use of the vacated road.

Mandamus can "compel a tribunal to act but cannot control its discretion." *Hewitt v. Ryan*, 356 N.W.2d 230, 233 (Iowa 1984). The court does not determine the extent of the taking or the amount of damages. *Phelps*, 211 N.W.2d at 276. The district court's order requiring DNR to acquire either a fee title or a leasehold interest should be modified to permit the appropriate state agency to acquire an easement if it chooses.

VIII. *Disposition.*

We affirm the court's judgment ordering condemnation proceedings be instituted but revise the order requiring the DNR to acquire either a fee title or a leasehold interest. We remand to the district court for entry of a summary judgment in accordance with this opinion. Costs are assessed equally to the parties.

**AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.**