Richard BUSHBY, Judy Lucas, Gina Cucchiara, David Cucchiara, Kevin Ward, and Dale Gonterman, Appellants,

v.

WASHINGTON COUNTY CONSERVATION BOARD and Washington County Board of Supervisors, Appellees.

No. 01–1548.

Supreme Court of Iowa.

Nov. 14, 2002.

Rehearing Denied Jan. 2, 2003.

Wallace L. Taylor, Cedar Rapids, for appellants.

Barbara A. Edmondson, County Attorney, for appellees.

CARTER, Justice.

Plaintiffs, Richard Bushby, Judy Lucas, Gina Cucchiara, David Cucchiara, Kevin Ward, and Dale Gonterman, opponents of a proposed tree-clearing project in a county park in Washington County, appeal from an adverse summary judgment denying injunctive relief. The appellees are the Washington County Conservation Board (conservation board) and the Washington County Board of Supervisors (board of supervisors). Appellants contend the actions of the two public boards violated the public-trust doctrine and were arbitrary, capricious, unreasonable, and an abuse of discretion. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

The pleadings, affidavits, and depositions that constitute the record on the summary-judgment motion reveal the following undisputed facts. Sockum Ridge is a 215–acre timber reserve and park in southern Washington County under the jurisdiction of the conservation board. The timber contains a large number of white oak, red oak, and shag bark hickory trees and has been left in a fairly natural state, except for development of a few hiking trails and a small pond.

On October 11, 2000, the conservation board held a public hearing on a proposal to increase timber-management activity at Sockum Ridge. A slide show was presented that revealed a plan for removal of dead and dying trees within the park and a proposal to clear-cut a five-acre zone within the park in order to promote the growth of oak trees and discourage the growth of more shade-tolerant trees. Several of the appellants appeared at the public hearing and spoke against the proposal.

At a meeting of the conservation board on November 8, 2000, the board's executive director, Steve Anderson, presented a slide show concerning timber management problems in Sockum Ridge. As part of this presentation, Anderson proposed the removal of dead and dying trees in the Sockum Ridge timber and, in addition, the "clear-cutting" of five acres of timber (described as the five acres south of the upper parking area in the park). According to Anderson, the purpose of the clear-cutting

was the removal of larger trees to facilitate the growth of younger oak trees. He stated that, if this was not done, undesirable shade-tolerant trees would predominate over more desirable trees. The proposal for removal of dead trees and a five-acre clear-cut was approved on a three-to-two vote of the conservation board.

At the December 13, 2000 meeting of the conservation board, a soil biologist appeared and gave assurances that the proposed tree harvest at Sockum Ridge would not produce erosion problems if done correctly. Several persons, including some of the appellants, appeared at this meeting and requested that the proposed tree harvest not be carried out.

On January 22, 2001, the appellants brought an action in equity, seeking to enjoin the conservation board from removing trees from the Sockum Ridge Park. One of the grounds urged in the petition was that the conservation board proposed to sell the trees for lumber and that to do so would be beyond the board's authority. The district court, on February 20, 2001, concluded that only the board of supervisors could contract to sell the trees. Based on that conclusion, the court granted a temporary injunction against the proposed tree harvest.

The district court's order prompted the board of supervisors to unanimously pass a resolution on March 27, 2001, following a public hearing, authorizing the county board to proceed with the harvest of dead and dying trees and a five-acre clear-cut. This authorization was conditioned on (1) the proceeds from the sale of the trees going into the county general fund, (2) limiting the harvesting of live trees in the five-acre clear-cut zone to trees of at least twelve inches in diameter, and (3) the removal of no trees from slopes or ravines.

In its meeting of April 11, 2001, the conservation board acquiesced in the conditions imposed by the board of supervisors and resolved to go forward with the tree-clearing project by a four-to-one vote. Shortly thereafter, the district court dismissed the temporary injunction prohibiting the tree removal and, in a subsequent ruling, granted summary judgment dismissing the petition for permanent injunction. This appeal followed.

## I. *Standard of Review.*

■■■ A ruling granting summary judgment is reviewed on appeal for correction of errors at law. *Crippen v. City of Cedar Rapids,* 618 N.W.2d 562, 565 (Iowa 2000). Summary judgment is appropriate if there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Iowa R. Civ. P. 1.981(3). On a motion for summary judgment, the record is viewed in the light most favorable to the nonmoving party. *Crippen,* 618 N.W.2d at 565.

## II. *Standing.*

■■ Appellees contend that appellants lack standing to challenge the action of the respective public bodies approving the proposed tree-removal project. Standing has been defined as the right of a person to seek judicial relief from an alleged injury. *Clark v. Iowa State Commerce Comm'n,* 286 N.W.2d 208, 210 (Iowa 1979). Recently, the court stated that, upon an objection of standing, the burden is on the plaintiff "to show (1) a specific, personal, and legal interest in the litigation, and (2) injury." *Rieff v. Evans,* 630 N.W.2d 278, 284 (Iowa 2001). While this court has dealt with issues of standing in many cases, we have not yet discussed the requisite standing requirements for environmental cases.

The United States Supreme Court has held that plaintiffs in cases involving environmental concerns establish standing if

"they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183, 120 S.Ct. 693, 705, 145 L.Ed.2d 610, 628 (2000) (citing *Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636, 643 (1972)). We apply that standard in the present case and conclude that plaintiffs have alleged sufficient facts to confer standing.

### III. *The Authority of the Conservation Board and Board of Supervisors to Approve the Cutting of Timber.*

█ We first discuss the authority of these two public boards to approve the tree-clearing project at Sockum Ridge Park. Iowa Code chapter 350 empowers counties to create a county conservation board upon approval of the voters. Iowa Code § 350.2 (1999). County conservation board members are appointed by the board of supervisors. Iowa Code §§ 331.321(1)(b), 350.2. Among other duties, county conservation boards have control over all property acquired by the county for county forests. Iowa Code § 350.4. In managing such areas, the conservation board is authorized to "plan, develop, preserve, administer and maintain all such areas, places and facilities." Iowa Code § 350.4(4). Pursuant to section 350.10, county conservation boards also have the powers set forth in sections 461A.35 through 461A.57, including:

> The commission may enter into agreements for the removal of ice, sand, gravel, stone, wood, or other natural material from lands or waters under the jurisdiction of the commission if, after investigation, it is determined that such removal will not be detrimental to the state's interest. The commission may specify the terms and consideration under which such removal is permitted and issue written permits for such removal.

Iowa Code § 461A.53. We are satisfied that the proactive management of trees in forested areas under the conservation board's control is authorized by the statutes we have identified.

The board of supervisors' duties and powers relating to the sale of county property include:

> In disposing of an interest in real property by sale ... the following procedures shall be followed, except as otherwise provided by state law:
>
> *a.* The board shall set forth its proposal in a resolution and shall publish notice of the time and place of a public hearing on the proposal, in accordance with section 331.305.
>
> *b.* After the public hearing, the board may make a final determination on the proposal by resolution.

Iowa Code § 331.361(2). The board of supervisors followed this procedure in authorizing the removal and sale of trees from Sockum Ridge Park.

### IV. *The Public Trust Doctrine.*

█ Appellants contend that these public bodies could not lawfully remove trees from Sockum Ridge because the natural timber is a public trust. The public-trust doctrine on which appellants rely is based on the idea that the public possesses inviolable rights to particular natural resources. *Fencl v. City of Harpers Ferry,* 620 N.W.2d 808, 813 (Iowa 2000). The purpose of the public-trust doctrine is to prohibit states from "conveying important natural resources" to private parties. *Id.* at 814 (citing *Ill. Cent. R.R. v. Illinois,* 146 U.S. 387, 452–53, 13 S.Ct. 110, 118, 36 L.Ed. 1018, 1042–43 (1892)).

In Iowa this doctrine was originally applied to the beds of navigable waters and has been expanded to include the recreational use of lakes and rivers. *Id.* at 813. Nevertheless, the scope of the public-trust doctrine in Iowa is narrow, and we have cautioned against overextending the doctrine. *Id.* We are convinced that it does not serve as an impediment to legally sanctioned management of forested areas by the public bodies entrusted by law with their care. As discussed in the prior division of this opinion, the authority of the conservation board and board of supervisors to manage this forested area is sanctioned by statute. The district court properly rejected appellants' contentions based on the public-trust doctrine.

### V. *Should the Proposed Cutting of Trees be Enjoined Because the Action Approving it was Arbitrary and Unreasonable.*

Appellants urge that the action of the conservation board and board of supervisors, which they challenge, was so arbitrary and unreasonable as to be unlawful. In response to this claim, the appellees urge that this court has severely limited the basis for challenging the action of political subdivisions. They urge that such limitation is found in the following statement:

> A municipal corporation and its officers ordinarily will not be restrained because their action is unwise, extravagant, or a mistake of judgment, but only where the action complained of is illegal, fraudulent, or clearly oppressive.

*Douglass v. City of Iowa City,* 218 N.W.2d 908, 913 (Iowa 1974).

Appellants respond that school districts are political subdivisions, and for purposes of challenging actions taken by those bodies, this court has stated:

> The courts of this state are not concerned with the wisdom of discretionary acts on the part of school boards.... The duty of all courts ... is to uphold a school regulation unless it is clearly arbitrary and unreasonable.... [O]ur task is to determine whether it is so unreasonable and arbitrary as to be illegal, void and unenforceable.

*Bd. of Dirs. of Indep. Sch. Dist. of Waterloo v. Green,* 259 Iowa 1260, 1267, 147 N.W.2d 854, 858 (1967). Appellants urge that the action of the conservation board and board of supervisors was so arbitrary and unreasonable as to fail under this test. We disagree.

It is significant that appellants make no effort to establish that the tree removal that was approved was unreasonable based on the merits of the action to be taken. Instead, they urge that the action approving the tree removal was arbitrary and capricious because the members of the conservation board and board of supervisors who voted to approve the tree removal were not aware of the number of trees to be removed, their location within the park, or why the executive director of the conservation commission contended that removal of the trees was the proper thing to do. We find no merit in this contention. The extent of the proposed tree removal was discussed at three meetings of the conservation board and at the board of supervisors meeting that authorized the proposed tree-removal project. The extent of the project was clearly designated in the resolutions of the respective boards approving same. The tree removal was described as all dead and dying trees within the 215–acre park and all trees of twelve-inch or greater diameter (except trees located on slopes or in ravines) in a five-acre zone within the park.

The reason for the proposed tree removal had been fully discussed by the conservation board before the resolution approv-

ing it was adopted. The project was a reinitiation of an identical project approved in 1989 but not carried out. It was based on the view of professional foresters that pressure from more shade-tolerant trees had to be taken off the oak trees. Also considered was a potential use of the five-acre zone as an educational project for timber management. The dispute between the proponents and opponents of the plan arose from a difference in philosophy as to whether publicly owned timber should be actively managed or left to the devices of nature. The public agencies entrusted with that decision elected to impose a degree of active management. It was clearly within their authority to make this choice.

Although the resolutions of the two public bodies do not describe the location of the five-acre zone in which the clear-cut is to occur, it is clear from the record that, in presenting the matter to the conservation board at its November 8, 2000 meeting, its executive director identified the location of this zone within the park. (It is described in the record as the five acres south of the upper parking area in the park.) Similarly, although the precise number of trees of twelve-inch diameter or the number of dead and dying trees that will be cut was not identified in the resolutions authorizing this action, we are confident that the members of the public bodies who voted to approve the project were aware of its scope. The action of the conservation board and board of supervisors has not been demonstrated to have been unreasonably or arbitrarily exercised.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**