# IN THE COURT OF APPEALS OF IOWA

No. 16-0970
Filed April 19, 2017

**JAMES M. WINTERS, CAROL A. WINTERS, TED WAITMAN, and
DEBORAH WAITMAN,**
        Plaintiffs-Appellees,

**vs.**

A.J. CHRISTEN and AUNE CHRISTEN, and their heirs, devisees, grantees,
assignments, successors in interest and any unknown claimants of the followed
described real estate situated in Allamakee County,
        Defendants,

and

**DUANE A. TANK and SHEILA M. TANK,**
        Intervenors-Appellants.
_____


        Appeal from the Iowa District Court for Allamakee County, John J.
Bauercamper, Judge.

        Duane Tank and Sheila Tank appeal the district court's grant of summary
judgment to James Winters, Carol Winters, Ted Waitman, and Deborah Waitman
in this quiet title action.  **AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED.**

        Roger L. Sutton of Sutton Law Office, Charles City, for appellants.

        James Burns of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C.,
Decorah, for appellees.


        Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

James Winters, Carol Winters, Ted Waitman, and Deborah Waitman instituted this quiet title action, seeking to establish their ownership over the land situated between their properties and that of the high water mark of the Mississippi River. Duane Tank and Sheila Tank filed an answer to the Winterses and Waitmans' petition, contesting their asserted ownership. The Winterses filed a motion for partial summary judgment to which the Tanks objected. The court granted the motion for partial summary judgment and quieted title in the Winterses and the Waitmans. The Tanks have appealed. We affirm in part, reverse in part, and remand.

### I. Background Facts and Proceedings

The Winterses' property lies westerly of the Mississippi River. The Waitmans' property is situated south of the Winterses' property. The Tanks' property is north of the Winterses' and Waitmans' properties, although it does not abut their properties, as other privately-owned land rests between them. To the east of all of these properties is the Mississippi River. However, between the west bank of the Mississippi River and the east boundary of these properties runs a strip of land. Thus, none of these properties directly abut the Mississippi River. Included on this strip of land are railroad tracks on the east side of the strip (closest to the river) and, to the west of the railroad tracks, a public road. The strip of land between the Tanks' property and the Mississippi River is owned

by the United States Government.[1]  It is the strip of land between the Winterses' and Waitmans' properties and the Mississippi River that is at issue in this case.

The Tanks and Winterses have previously litigated a related dispute over the property at issue.  In 2011, the Tanks filed a petition for temporary and permanent injunctions and seeking monetary damages based on the Winterses' alleged interference with the Tanks' ability to use a dock they had constructed on the river shoreline to the east of the Winterses' property.  At that time, the Winterses—who had also installed a dock on the shore—claimed ownership of the same shoreline and all the real estate between their property and the Mississippi River.  The Winterses also claimed they had acquired the disputed strip of land by adverse possession.  Accordingly, the Winterses sought a permanent injunction against the Tanks and an order requiring them to remove their dock.

A plat of the land at issue was recorded in 1892.  Referencing the abstract of title to the Winterses' real estate, the district court noted in the 2011 action, "It is not clear from the [1892] plat where [the width of the lot] commences.  It could commence at some point in the river, on the railroad track or on the possible roadway."  In 1949, property was conveyed to A.J. and Aune Christen.  The district court recounted that in this conveyance the property transfer "except[ed] that portion of Government Lot 4 lying Easterly of the Northeasterly right of way

---

[1] The record indicates this land is used as a wildlife refuge.

line of the railroad." That is, in part of the property conveyed, the land to the east of the railroad was not included.[2]

The district court further summarized that, in 1970, the Christens had a surveyor plat their land; the plat was recorded in October of that same year. The plat divided the land into lots, and the easternmost edge of those lots was the county road. Thus, "[t]he land containing the roadway and railroad tracks, which runs east from the lots to the Mississippi River, [wa]s not divided into lots." Certain lots were then conveyed to Donald and Patricia Clark in 1972; the deed specifically provided: "Sellers will not warranty any title East of County Road . . . ." The same property was then deeded to Billy and Judith Crandall. The deed provided the "intention [was] to convey from [the] County Road on [the] East side, to [the] West line of said Lot." The Winterses owned the property after the Crandalls. All of these conveyances passed "[s]ubject to public highway and rights of the Railroad and U.S. Government if any."

In resolving the parties' dispute, the district court found: (1) the strip of land in dispute—that is "[t]he real estate lying east of the eastern lot lines, which encompasses the roadway, railroad tracks, as well as the land to the Mississippi River"—was still owned by the Christens' heirs as it "was not included in any lots and, accordingly, was not conveyed"; (2) the Winterses had not brought an action to quiet title, and regardless, the Christens' heirs were necessary parties for the land to be quieted; and (3) neither party had a possessory interest in the shoreline. Accordingly, both parties' claims were dismissed.

---

[2] It is unclear from the record whether this portion of Lot 4 is even part of the land at issue.

In 2013, the Winterses and Waitmans brought a petition in equity to quiet title. They named as defendants the Christens' heirs and claimed they had adversely possessed the disputed land. Though not named in the action, the Tanks filed an answer, claiming the suit had been previously adjudicated, the Winterses and Waitmans had failed to join the State of Iowa and United States as parties to the action, and the Tanks had also used the property at issue.[3] In October 2015, the Winterses filed a motion for partial summary judgment, alleging there was no genuine issue of material fact that (1) they had adversely possessed the property, (2) the Christens' heir—Sheila Daniels—had deeded the disputed property to them, and (3) the Tanks were legal strangers to the same property. In their resistance to the motion, the Tanks argued, in relevant part, the Winterses failed to establish the ownership of the land between the railroad tracks and the high water mark of the Mississippi River, there was no evidence Sheila Daniels owned the property at issue, and the Tanks had rights to the property under the public trust doctrine. Following the filing of the Tanks' resistance, the Winterses filed an affidavit of Sheila Daniels and a Quit Claim Deed executed by Daniels, which conveyed to the Winterses and Waitmans, respectively, any interest she had in the properties.

In April 2016, following a hearing, the district court entered its order granting the motion for partial summary judgment. In its order,[4] the district court found the Tanks were "clearly strangers to the title," the Winterses "had sole and

---

[3] On appeal, the Tanks clarified they answered to "[e]nsure their access to public land and their right to cross the county road property, the railroad property, and the State property to reach their federal docking rights."

[4] The Tanks state the district court judicially noticed the 2011 order as binding precedent.

exclusive use" of the property since 1996, the claim of adverse possession had been clearly established, the parties were "not disputing the State's rights to own all land past the ordinary high water mark and nothing . . . require[d] the court to determine where that high water mark [wa]s located," and "there [we]re no public rights for the Tanks as citizens to protect." The court then quieted title to the Winterses and Waitmans.[5] The Tanks appeal.

## II.    Standard and Scope of Review

"Actions for quiet title lie in equity"; thus, "our review is de novo." *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886 (Iowa 1981). However, "on the issues adjudicated by the trial court in its partial summary judgment . . . , we review for correction of errors at law." *Id.*

## III.    Analysis

On appeal, the Tanks concede the following: they have never had any title interest in either the Winterses' property or the currently disputed property; any claim they had to occupy the property was resolved by the 2011 case; and they no longer have a dock adjacent to the Winterses' property, as they received a permit to dock south of the Winterses' and Waitmans' respective properties. Instead, they assert their interest lies in needing to cross the Winterses' and Waitmans' properties to reach their dock. They further assert they "have an interest in protecting the access to public lands along the river and their crossing of the county's road and railroad property to access the public land to the rivers

---

[5] The district court actually quieted title of the description contained in division 1, paragraph 1 to the Winterses and division 2, paragraph 1 to the Waitmans. These paragraphs, however, appear to be the legal descriptions of the properties the Winterses and Waitmans indisputably own, not the strip of land in dispute, which is described in paragraph 2 of each division.

natural resources and to use their federal docking privileges on public land along the shore."

When reviewing the district court's grant of summary judgment, we must determine if a genuine issue of material fact exists. *See Peak v. Adams*, 799 N.W.2d 535, 542-43 (Iowa 2011). On appeal, the Tanks dispute the following: (1) the legal description used by the Winterses as descriptive of the property they seek to acquire; (2) that the Winterses proved the Christens—and thus Daniels— ever owned property beyond the west side of the county road; and (3) the Winterses' claim the Tanks are legal strangers to the land.

We first consider the district court's conclusion the Tanks are legal strangers to this property. Though not argued in any detail, the Tanks claim their interest in this matter is under the public trust doctrine.

"The public trust doctrine is 'based on the notion that the public possesses inviolable rights to certain natural resources.'" *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 813 (Iowa 2000) (citation omitted). "The State has very limited power to dispose of such property." *Id.* The Iowa Supreme Court has previously applied this doctrine to conclude "land under the Missouri River was public trust property and could not be sold by the State." *Id.* (citing *State v. Dakota Cty., Neb.*, 93 N.W.2d 595, 599 (Iowa 1958)). "The doctrine in Iowa has a narrow scope: 'We do not necessarily subscribe to broad applications of the doctrine, noted by one authority to include rural parklands, historic battlefields, or archeological remains. In fact, we are cautioned against an overextension of the doctrine.'" *Id.* (citation omitted). "The doctrine was 'originally applied [in Iowa] to the beds of navigable waters, but has now expanded to embrace the public's use

of lakes and rivers for recreational purposes as well.'"  *Id.* (alteration in original) (quoting *Larman v. State*, 552 N.W.2d 158, 161 (Iowa 1996)).  *But see Bushby v. Washington Cty. Conservation Bd.*, 654 N.W.2d 494, 498 (Iowa 2002) (finding the public trust doctrine "does not serve as an impediment to legally sanctioned management of forested areas by the public bodies entrusted by law with their care").  It also includes "the public's right of access to public waters."  *Larman*, 552 N.W.2d at 161.  "This means that state-owned land adjacent to the river, as well as the land actually covered by the river, must be part of the public trust." *State v. Sorensen*, 436 N.W.2d 358, 363 (Iowa 1989).  However,

> th[e] underpinnings of the public trust doctrine have no applicability to public streets and alleys.  Simply stated, an alley is not a natural resource.  Unlike the unique nature of the Missouri River, an alley exists merely where the governmental entity chooses to place it. Moreover, it is clear that the government has the power, albeit subject to some limitations, to alienate property originally dedicate for streets and alleys.

*Fencl*, 620 N.W.2d at 814 (considering whether an alley fell within the public trust when it did not provide access to a river or lake).  For the public trust doctrine to apply, the land at issue must be owned by the State.  *See Larman*, 552 N.W.2d at 161 ("[A]ccess is protected only to the extent the land providing such access is owned by the State.").

There is no dispute the State owns all land from the ordinary high water mark on the west side of the river to the middle of the river bed.  *See State ex. rel. Iowa Dep't of Nat. Res. v. Burlington Basket Co.*, 651 N.W.2d 29, 32 (Iowa

2002). The parties, however, dispute the exact location of that high water mark.[6] The Winterses and Waitmans argue its exact location is immaterial. The district court similarly found the Winterses were "not disputing the State's rights to own all land past [i.e., east of] the ordinary high water mark and nothing in this case requires the court to determine where the high water mark is located." The description of the property sought by the Winterses is subject to the "normal high water line on the westerly bank of the Mississippi River." Thus, excluding property past the high water mark preserved that property to the State of Iowa.[7] The Tanks have identified no other property owned by the State. Accordingly, the State has conveyed no property in this matter and, in fact, has retained whatever it owned before this litigation.

Second, the Tanks have made no argument as to how they have any legal interest in any property potentially owned by the railroad.[8] Thus, the only remaining claim connecting the Tanks to the property at issue is the county road. *See Bushby*, 654 N.W.2d at 495 (considering the application of the public trust doctrine where the plaintiffs opposed a tree-clearing project scheduled for a county park). The Tanks claim "various exhibits . . . show the ownership rights of

---

[6] In the 2011 order, the district court noted the exact location of the high water mark had not been established, but "witnesses who own land in the area of the Winters[es], and Winters himself, describe[d] the high-water mark as at or near the railroad tracks."

[7] The Tanks also claim the district court's failure to identify the high water mark violates Iowa Code section 461A.24 (2013) ("Whenever a controversy shall arise as to the true boundary line between state-owned property and private property, the commission may adjust the boundary line or take such other action in the premises as in its judgment may seem right. When the disputed boundary line is fixed it shall be surveyed and marked."). However, our supreme court has determined Iowa Code chapter 461A does not create a private right to sue. *See Estate of McFarlin v. State*, 881 N.W.2d 51, 56-58 (Iowa 2016).

[8] The Winterses claim the railroad has only an easement and not ownership of the property.

the county, the railroad, and allege the high water mark."[9]  The Winterses claim the county has only an easement and their ownership of the disputed property, as declared by the district court, is thus "subject to [the] County Road Right-of-Way (Riverview Road) and Railroad Right-Of-Way (Dakota, Minnesota, and Eastern Railroad Company.).""  Even if this were to give rise to a factual dispute over whether the property was owned by the county or only an easement existed, the Tanks still must demonstrate the county's purported ownership of the road creates an interest for the Tanks under the public trust doctrine.  The Tanks argue

> they are the public and they have an interest in the county road, and their interest in the public land adjacent to the river cannot be adversely affected by [the] Winters[es] or Waitmans['] claim that they can cross railroad property, county road property, or state property that could affect the use of their acquired docking rights from the Federal Corps[] of Engineer[s].

The Winterses argue any such claim "fails because neither the property in issue nor the access [the Tanks] seek come[s] within the public trust." Specifically, "the Tanks' asserted right is unique to them and does not restrict public access to the river nor individual access to any enumerated entitlement in the Tanks."  The Winterses further note other access to the river exists and, as the dock is south of their property, the Tanks can traverse the county road to the location of their dock—any private property that would need to be crossed would be the property where the dock is now kept, which is property not owned by the Winterses.

---

[9] The exhibits mentioned by the Tanks appear to be from the Allamakee County Assessor's Office.

The Tanks have not claimed, nor have they demonstrated, that this property served as a public access point to the river—as the county road is west of the railroad tracks, which is property the Tanks contend is owned by the railroad. *See generally Schaller v. State*, 537 N.W.2d 738, 742 (Iowa 1995) ("Where the easement extends to a public lake, it may be inferred the road easement provides access to the lake."). The Tanks have not claimed this property was previously employed by the general public as an access point, only that the Winterses and Tanks constructed their own private docks there. *See Sorensen*, 436 N.W.2d at 363 (noting the public trust doctrine was "not limited to navigation or commerce" but "applies broadly to the public's *use* of property" and finding state-owned land that was adjacent to the river was part of the public trust noting "there was considerable evidence that the public had been using the land in question" for "recreational activities" such as "hiking, camping, biking, and picnicking, as well as transportation on the river itself"). Instead, this dispute appears to be one regarding the county's management of the road and purported failure to protect it from the Winterses' adverse possession claim. Even assuming the county had an obligation to maintain the road, *but see Schaller*, 537 N.W.2d at 742 ("A county has statutory authority to vacate roads. The public does not have a vested right to keep a road open." (citations omitted)), the road in the instant matter—which crosses the Winterses' and Waitmans' properties—remains traversable by the Tanks and the general public.

Ultimately, the Tanks' self-declared concern is with reaching their privately-owned dock. As noted by the Winterses, the Tanks have given no indication this dock is open to the public. The Tanks' objection is a private, not

public, concern. As the Tanks' dock is no longer adjacent to the Winterses' and Waitmans' properties, but instead is simply placed somewhere south of their land, the Tanks' only interest is in crossing the Winterses' and Waitmans' properties, a right still available to them via the county road. Accordingly, the district court's finding the Tanks have no legal interest in the land is affirmed. *See Godfrey v. State*, 752 N.W.2d 413, 419 (Iowa 2008) (stating, to have standing, a party must have a specific or legal interest to advance a legal claim and must have been injured in fact). We affirm the district court's grant of summary judgment to the Winterses. Having affirmed, we need not reach the Tanks' remaining arguments as to the Winterses.

The Tanks also appeal the district court's grant of summary judgment to the Waitmans when the Waitmans had not filed a motion for summary judgment nor joined in the Winterses' filings. The Waitmans generally claim they "are co-plaintiffs whose interests, evidence, and arguments are indistinguishable from [the Winterses], and whose joint claim the Tanks did not attempt to sever." "[S]ummary judgment may be entered only for one who has filed a motion asking that relief and only after notice and hearing on that motion." *In re Campbell*, 253 N.W.2d 906, 907-08 (Iowa 1977) (reversing the district court and "refusing to grant summary judgment to one who has not requested it"); *see also C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011) (finding the district court erred by enlarging its ruling to dismiss claims for which the movant had not sought summary judgment). Because the Waitmans did not file a motion

for summary judgment, we reverse the finding of the district court with regard to the Waitmans' quiet title action and remand for further proceedings.[10]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[10] The Tanks also request attorney fees. The Tanks provide no legal authority supporting an entitlement to fees. Their request is denied.